422 A.2d 659

**COMMONWEALTH of Pennsylvania**

**v.**

**Vincent Theodore CHARLETT, Appellant.**

Superior Court of Pennsylvania.

Argued April 14, 1980.

Filed Nov. 14, 1980.

Allen N. Brunwasser, Pittsburgh, for appellant.

Kathryn L. Simpson, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CAVANAUGH, HOFFMAN and VAN der VOORT, JJ.

CAVANAUGH, Judge:

On June 28, 1978, appellant Charlett was convicted by a jury on two counts of promoting prostitution, corruption of minors, criminal solicitation and criminal conspiracy. Motions for a new trial and in arrest of judgment were denied. The record of such motions cannot be found. On February 12, 1979, appellant was sentenced to a period of five to ten years' incarceration. The pertinent pretrial history of the case is as follows:

Defendant's trial date was set for June 20, 1978. On June 16, 1978, defendant requested a postponement. He claimed that he needed additional time to raise funds to secure private counsel. Administrative Judge Dauer granted the

request for postponement and rescheduled the trial for July 17, 1978. The subsequent history of the trial scheduling may be taken from the opinion of Judge Dauer in acting on the post–trial motions:[1]

> On Monday, June 19, 1978, this court was informed by the Pennsylvania State Police Officers, who were prosecuting the case, that an essential witness was being detained at the Schuman Juvenile Detention Center for the purpose of testifying against the defendant. There was concern that this witness would be released, return to her out–of–state home and would not be available on the rescheduled trial date.
>
> This court then rescinded the original postponement and advised the defendant by telephone that the case would proceed as originally scheduled on June 20.
>
> The case did not begin on June 20 as scheduled, presumably because of a back up in jury trials. On June 22, 1978, this court appointed Attorney Daniel Gigler to represent the defendant inasmuch as he had not been able to afford the fee demanded by the counsel of his choice. On June 23, 1978, a request for a postponement on the case, based upon illness of the defendant, was denied. However, the case was held over until June 26, 1978. The jury trial did begin on June 26 and the jury's verdict finding the defendant guilty on two counts, was rendered on June 28, 1978.

Appellant first attacks the court's action in revoking the prior grant of a continuance and the failure to permit him sufficient time to make arrangements to hire counsel of his choice. Since we find that the grant of a new trial is warranted by the failure of the trial court to obtain a proper waiver of the right to counsel we need not decide whether the court erred in failing to grant a continuance.

Just prior to the commencement of the trial, Judge Lewis, the trial judge, asked defendant if he wanted court–appoint-

1. The case was assigned for trial by Administrative Judge Dauer and actually tried by Judge Lewis. Since the post–trial motions dealt with actions by both judges, they each wrote separate opinions.

32

ed counsel to represent him. The following dialogue took place:

THE COURT: Are you representing who?

MR. GIGLER: That's a good question. That's the first question. We were appointed, as you know, by Judge Dauer this past last Thursday and Mr. Charlett indicated very vehemently in front of Judge Dauer that he opposed our representation and wished to proceed on his own at that time.

We are here today still not 100% clear on our status as to representation of Mr. Charlett.

THE COURT: I understand he has private counsel now of his own choosing.

MR. CHARLETT: I was going to make a phone call to that effect.

THE COURT: He objects to Mr. Gigler representing him?

MR. CHARLETT: I want to make a motion that canon No. 5, a conflict of interest of Mr. Gigler is a law firm partner of John Knorr and John Knorr is definitely prejudiced in any particular case.

As a matter of fact, the man dislikes me to the point where this afternoon he called me scum out in the hallway. Well, I hardly know Mr. Gigler. I am sure that he and John Knorr are better friends than what I would be of Mr. Gigler's. So I strongly object. As a matter of fact, I object to the point at a later date whenever I can I want John Knorr brought before the disciplinary board in reference to this, and I am going to speak about a lawsuit.

THE COURT: I want to know right now, are you going to have somebody sit with you whether you try it or whether the attorney tries it?

It's much better if the attorney tries it. I think you would get much better representation.

But I want to know now, do you—you have the privilege of trying your own case. Is that what you want to do?

MR. CHARLETT: I have no choice, your Honor, because—

THE COURT: Do you want this young man to represent you?

MR. CHARLETT: No. With all respect to you, sir, to the Court, I object because of his association—

THE COURT: That isn't the question. He's going to sit, whether he tries the case or not, to protect your rights.

Now do you want him to represent you or do you want to represent yourself?

MR. CHARLETT: I'm going to represent myself.

THE COURT: Let's call the jury.

MR. CHARLETT: He's going to be my advisor.

MR. GIGLER: May I interject?

Here again, you know, I feel like I'm in a squeeze. I'm sure you understand the way I feel, but I have had an opportunity to review this case and in anticipation of representing Mr. Charlett I do want to protect Mr. Charlett's rights.

There are a number of motions which I think ought to be put on the record at this time.

There was no opportunity to put them on at any other early time because as I explained, no one represented Mr. Charlett and he's not an attorney.

Now if I could put these on the record on his behalf as his advisor then I wish he permits me to do that.

MR. CHARLETT: I have another motion.

THE COURT: You object to this young attorney putting these motions on the record?

MR. CHARLETT: No. As an advisor—

THE COURT: I don't want an advisor. Do you object to him putting these motions on the record—yes or no?

MR. CHARLETT: No, I don't object to him putting the motions on the record, especially the sequester.

THE COURT: Go ahead.

Before deciding if appellant *waived* the right to counsel we must determine if in fact he *accepted* the services of court–appointed counsel, Mr. Gigler. From the foregoing colloquy it appears that appellant rejected the representation by Mr.

Gigler both before Judge Dauer and again before Judge Lewis. However, while advising the court that he would represent himself he at the same time accepted Mr. Gigler as his "advisor". He thereafter acquiesced in counsel making certain motions on his behalf. An examination of the record, however, shows almost complete self–representation by Mr. Charlett. He waived opening statement and made his own closing argument. During the course of the trial both Mr. Gigler and appellant made objections. Appellant conducted all of the cross and recross examination of the five Commonwealth witnesses and proferred points for charge. Moreover, it is apparent that the crucial trial decisions were made by appellant on his own.[2]

2. For example—

MR. GIGLER: I think Mr. Charlett has to make a motion at this point, your Honor.

MR. CHARLETT: Yes, your Honor.

First off, I'd like to move the charges against me be dismissed because the charges have not been proven.

THE COURT: Motion refused.

MR. CHARLETT: And No. 2, I want to put on each and every police officer to ask him if he or anyone else to his knowledge contacted Judge Dauer to ask him to revoke his June 16th, 1978 order to continue the case.

THE COURT: What's this?

MR. VATZ: Motion to postpone which originally was granted and was set aside by Judge Dauer.

Apparently, the police officers had contacted Judge Dauer because of problems they were having with our witness who had to, you know, be here for the original trial day and Judge Dauer then set aside.

Mr. Charlett apparently wants to go into the matter of postponement in front of the jury.

THE COURT: That has no relevance.

What else?

MR. CHARLETT: I want time to consider if I should put in a defense. And also to review my notes. I need that time, naturally, because I had no legal mind and I would naturally need a considerable more time than a man that's gone to law school, so to speak.

I'd like to have time to consider whether I should put in my defense and review my notes. I would need that additional time.

THE COURT: How much time do you want? Do you want a half an hour?

MR. CHARLETT: Your Honor, you might help me to decide on this.

First of all, I went to tenth grade in high school–I'm not a moron mind, I mean I do have a certain amount of intelligence. I picked it

█ Based on this record it cannot be said that appellant accepted the services of Mr. Gigler to act as his counsel. Moreover, when specifically asked if he wanted Mr. Gigler to represent him he replied, "No." Therefore, the court was on notice that he was undertaking to represent himself before the start of the trial.

█ Our courts have consistently held that the right to counsel at trial is constitutionally protected. *Commonwealth v. Kennedy*, 451 Pa. 483, 305 A.2d 890 (1973). While this right may be waived, such waiver must be made knowingly, intelligently and voluntarily by the accused. *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Commonwealth v. Tyler*, 468 Pa. 193, 360 A.2d 617 (1976); *Commonwealth v. Hauser*, 265 Pa.Super. 135, 401 A.2d 837 (1979). This principle has found expression in Pa.R.Crim.P. 318(c) (effective June 1, 1978):

When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary and intelligent waiver of counsel.

up through the years. But a tenth grade–a person going to tenth grade to have to go over this himself, it takes a considerable amount of thought.

I would ask the Court, please, your Honor, I really need an hour.

THE COURT: I will give you until 10:30 to review your notes.

MR. CHARLETT: I want to thank you very much.

THE COURT: Decide whether you're going to put in a defense or not. Anything else?

MR. CHARLETT: Yes. Two more.

And then I would like to say, in addition to what I have just said, I would like to move that the jury find me not guilty.

MR. GIGLER: I think Mr. Charlett is asking for a directed verdict.

MR. CHARLETT: Right.

THE COURT: Motion refused.

MR. CHARLETT: And then your Honor, in addition to me, the time which you have generously given me in consideration for the defense and time to review my notes, I would like to have a little additional time to think about what the Court should tell the jury. That is of great importance–

THE COURT: I told you I will give you until 10:30 to review your notes. That's the end. We can't postpone it any longer.

The judge must conduct a penetrating and comprehensive inquiry of the defendant to ascertain whether he understands the nature of the charges against him, the permissible range of sentences to which he is exposed, the possible defenses to the charges and all the circumstances. Comment to Pa.R.Crim.P. 318; *Commonwealth v. Tyler, supra; Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa. 515, 204 A.2d 439 (1964); *Commonwealth ex rel. McCray v. Rundle,* 415 Pa. 65, 202 A.2d 303 (1964); *Commonwealth v. Grant,* 229 Pa.Super. 419, 323 A.2d 354 (1974). Our courts have held that the burden of showing an understanding intelligent and voluntary waiver of counsel is on the Commonwealth where the record is silent or indicates there was no understanding and intelligent waiver. However, where defendant refuses to be represented by court–appointed counsel and this refusal appears on the record, the accused must show by a preponderance of the evidence that the waiver was not made knowingly, intelligently and voluntarily. *Commonwealth ex rel. Wright v. Cavell,* 422 Pa. 253, 220 A.2d 611 (1966).

In the instant case, defendant was offered court–appointed counsel but refused such counsel and the refusal appears on the record. Applying the standard in *Commonwealth ex rel. Wright v. Cavell, supra,* we find that defendant has shown by a preponderance of the evidence that he did not knowingly, intelligently and voluntarily waive his right to counsel where, as here, there is a complete absence in the record of any inquiry by the judge to ascertain whether defendant knowingly, intelligently and voluntarily waived his right to counsel. The judge did inform defendant on the record that he would get much better representation from court–appointed counsel than by proceeding pro se. However, this simple advice is inadequate. As stated above, the judge must ascertain whether defendant understands the nature of the charges, the range of allowable punishments, the possible defenses to the charges and all other facts essential to a broad understanding of the whole matter. *Commonwealth v. Tyler,* supra; *Commonwealth v.*

*Hauser,* 265 Pa.Super. 135, 401 A.2d 837 (1979); *Commonwealth v. Fowler,* 271 Pa.Super. 138, 412 A.2d 614 (1979). Indeed Pa.R.Crim.P. 318(c) has codified the requirement of such a colloquy by the judge. The rule states that "the judge *shall* ascertain from defendant, on the record, whether there is a knowing, intelligent and voluntary waiver of counsel." The command in Pa.R.Crim.P. 318(c) is mandatory. Because the lower court failed to conduct a full and complete colloquy on the record to ascertain whether defendant knowingly, intelligently and voluntarily waived his right to counsel, defendant cannot be deemed to have effectively waived his right to counsel.[3] Reversed and remanded for a new trial.

Judgment of sentence reversed.

**3.** Defendant raises other issues on appeal, however, we need not address those issues since our resolution of the waiver issue is dispositive of the instant appeal.