481 A.2d 336

**COMMONWEALTH of Pennsylvania**

**v.**

**John A. DOOLEY, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 20, 1984.

Filed Aug. 3, 1984.

228

Robert W. Suter, Assistant Public Defender, Doylestown, for appellant.

Butler Buchanan, Assistant District Attorney, Doyles-town, for Commonwealth, appellee.

Before BROSKY, WIEAND and HESTER, JJ.

WIEAND, Judge:

John Dooley waived the right to be represented by an attorney at trial and elected to represent himself. A jury found him guilty on three counts of robbery [1] and on one count of theft.[2] On direct appeal from the judgment of sentence, Dooley argues (1) that the verdicts were against the weight of the evidence; (2) that his waiver of the right to be represented by counsel at trial was not knowingly and intelligently made; (3) that a pre-trial lineup was unfairly prejudicial; (4) that the trial court erred in failing to declare a mistrial (a) when members of the jury observed him in handcuffs and (b) when a question by the prosecuting attorney suggested that he had a prior criminal record. There is no merit in these arguments; and, therefore, we will affirm the judgment of sentence.

"Whether the verdict is contrary to the weight of the evidence, thereby requiring a new trial, is generally a question within the sound discretion of the trial court. If the jury's findings are supported by the record, the trial court's denial of a motion for new trial will not be disturbed on appeal absent an abuse of discretion. The test is not whether the reviewing court would have decided the case the same way the fact finder did but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail." *Commonwealth v. Sample*, 321 Pa.Super. 457, 465, 468 A.2d 799, 803 (1983) (citations omitted) (emphasis deleted). See also: *Commonwealth v. Taylor*, 324 Pa.Super. 420, 425, 471 A.2d 1228, 1230 (1984); *Commonwealth v. Gonce*, 320 Pa.Super. 19, 25, 466 A.2d 1039, 1042 (1983).

1. 18 Pa.C.S. § 3701.

2. 18 Pa.C.S. § 3921(a).

The evidence in this case showed that Dooley had gone into a Wa Wa store in Bensalem Township, Bucks County, around midnight on August 18, 1980. After purchasing cigarettes, Dooley ordered Steven Mowrey to give him the money in the register. When Mowrey asked for help from two other employees, Peggy Donahue and Roy Rettig, Dooley told them not to move and threatened to use a partially revealed gun. Mowrey thereupon gave Dooley the money that was in the register, following which Dooley left the store and disappeared. The trial court did not abuse its discretion in finding the verdicts consistent with the weight of the evidence.

■ Appellant has suggested that the verdicts were against the weight of the evidence because the jury found him guilty of committing three robberies even though he had committed only one theft.[3] This argument is not well made. See: *Commonwealth v. Holmes*, 315 Pa.Super. 256, 461 A.2d 1268 (1983). It would more properly be made as part of a contention that the evidence was insufficient to sustain the three separate findings of guilt.[4] At most, such an argument would entitle appellant to an arrest of judgment on two of the three robbery convictions; it would not entitle him to a new trial. In fact, even though three store clerks had been threatened, the trial court treated appel-

---

**3.** This precise issue has not previously been before the appellate courts of this state. Compare: *Commonwealth v. Lockhart*, 223 Pa.Super. 60, 296 A.2d 883 (1972) (separate robbery occurs each time another person is put in fear and from whom goods or money is taken). Compare also: *Commonwealth v. Bryant*, 282 Pa.Super. 600, 423 A.2d 407 (1980). Other jurisdictions have generally held that under circumstances similar to those of the instant case only one conviction for robbery can be had. See, e.g., *State v. Faatea*, 65 Hawaii 156, 157–158, 648 P.2d 197, 198–199 (1982); *People v. Nicks*, 23 Ill.App.3d 435, 442, 319 N.E.2d 531, 536 (1974), *modified on other grounds*, 62 Ill.2d 350, 342 N.E.2d 360 (1976); *Williams v. State*, 271 Ind. 656, 664–670, 395 N.E.2d 239, 246–249 (1979); *State v. Potter*, 285 N.C. 238, 253, 204 S.E.2d 649, 659 (1974). But see: *Commonwealth v. Levia*, 385 Mass. 345, 350–351, 431 N.E.2d 928, 931 (1982).

**4.** This contention has not been made. Appellant has stated the question as follows: "Were the verdicts of guilty as to robbery of Peggy Donahue and Roy Rettig (two of the store clerks) against the weight of the evidence?"

lant's conduct as one criminal act and imposed only one sentence. Cf. *Commonwealth v. Phillips*, 215 Pa.Super. 5, 257 A.2d 81 (1969); *Commonwealth v. Bitler*, 133 Pa.Super. 268, 2 A.2d 493 (1938).

■ The right to be represented by counsel at trial is constitutionally protected. *Commonwealth v. Kennedy*, 451 Pa. 483, 305 A.2d 890 (1973). This right, however, may be waived. In *Commonwealth v. Charlett*, 282 Pa.Super. 28, 422 A.2d 659 (1980), this Court said:

> While this right may be waived, such waiver must be made knowingly, intelligently and voluntarily by the accused. *Von Moltke v. Gillies*, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948); *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Commonwealth v. Tyler*, 468 Pa. 193, 360 A.2d 617 (1976); *Commonwealth v. Hauser*, 265 Pa.Super. 135, 401 A.2d 837 (1979). This principle has found expression in Pa.R.Crim.P. 318(c) (effective [January] 1, 1978):
>
> > When the defendant seeks to waive the right to counsel after the preliminary hearing, the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary and intelligent waiver of counsel.
>
> The judge must conduct a penetrating and comprehensive inquiry of the defendant to ascertain whether he understands the nature of the charges against him, the permissible range of sentences to which he is exposed, the possible defenses to the charges and all the circumstances. Comment to Pa.R.Crim.P. 318; *Commonwealth v. Tyler, supra; Commonwealth ex rel. O'Lock v. Rundle*, 415 Pa. 515, 204 A.2d 439 (1964); *Commonwealth ex rel. McCray v. Rundle*, 415 Pa. 65, 202 A.2d 303 (1964); *Commonwealth v. Grant*, 229 Pa.Super. 419, 323 A.2d 354 (1974).

*Id.*, 282 Pa.Superior Ct. at 35–36, 422 A.2d at 663. See also: *Commonwealth v. Baker*, 318 Pa.Super. 19, 464 A.2d 496 (1983); *Commonwealth v. Palmer*, 315 Pa.Super. 601, 609,

462 A.2d 755, 758 (1983); *Commonwealth v. Andrews,* 282 Pa.Super. 115, 127, 422 A.2d 855, 861 (1980).

██ In the instant case, the following colloquy took place:

"MR. DOOLEY: You have a real way with words, Buck. I am not going to continue to waste any more time. I am going to represent myself and Mr. Suter will advise me. I will appreciate having Mr. Suter as my backup counsel and I thank you very much; also you, Buck.

"THE COURT: Okay, now let's roll into the formal colloquy.

"Do you understand, John Dooley, that you have the right to be represented by counsel?

"MR. DOOLEY: Yes, Your Honor; I do.

"THE COURT: You could have free counsel approinted [sic] for you if you are indigent?

"MR. DOOLEY: Yes, Your Honor. I do have counsel appointed to assist.

"THE COURT: Right. You understand the nature of the charges against you and can you tell me what the elements of each of those offenses are?

"MR. DOOLEY: I really don't know what you mean, Your Honor. I am slow and I really don't know what you mean.

"THE COURT: Can you define the offense of robbery for me?

"MR. DOOLEY: Robbery is to, I imagine, take from someone with the demand of either a threat or bodily harm or inimidate [sic].

"THE COURT: That's pretty good.

"MR. DOOLEY: Thank you.

"THE COURT: You won't pass.

"MR. DOOLEY: No?

"THE COURT: Do you understand anything about the permissable [sic] range of sentences and fines that can be imposed for these offenses?

"MR. DOOLEY: Yes, Your Honor.

"THE COURT: What are they?

"MR. DOOLEY: Took that into consideration. Really don't know what they are, to tell you the truth, really not interested at this time in what the fine and trials and tribulations are. I am interested in getting it over and I imagine there is a large fine if I am found guilty, you know, and I believe there is a 20-year maximum, whatever, maybe, if there is a weapon used.

"THE COURT: Right. A 20-year maximum.

"MR. DOOLEY: Yes.

"THE COURT: You understand that?

"MR. DOOLEY: Yes, Your Honor.

"THE COURT: Now the $64 question, Mr. Dooley, do you understand that if you waive the right to counsel, you will still be bound by all the normal rules of procedure?

"MR. DOOLEY: Yes, Your Honor.

"THE COURT: I will expect you to behave like any other lawyer.

"MR. DOOLEY: Definitely will, as the motion has started, I will.

"THE COURT: All right. No funny stuff.

"MR. DOOLEY: No.

"THE COURT: Now, do you believe that you can conduct your defense better than Mr. Suter?

"MR. DOOLEY: Well, if I said "yes", they would have a psychiatric evaluation done to me, but I would have to say I would have more interest in the outcome than Mr. Suter, and I feel justified giving my best to the outcome no matter how it came out.

"THE COURT: All right.

. . . .

"THE COURT: Do you understand that there are possible defenses to these charges which counsel might be aware

of and that if these defenses are not raised at this trial, that you may have lost them permanently?

"MR. DOOLEY: Yes, Your Honor. I also would like at this particular time, right now, Mr. Suter definitely has been counsel for some 3 months at least and I feel as though he is sitting here and he is aware of this also, and if he brings it to my attention, I will bring it to the Court's.

"THE COURT: All right. Do you understand that in addition to these defenses, that you have many rights which if not timely asserted by you, you may lose permanently; and if there are errors which occur and are not objected to or otherwise timely raised by you, that these areas may be lost to you permanently; do you understand that?

"MR. DOOLEY: Yes, I do; but also I would say as far as objecting, I will have to—wouldn't be fair for like, you say, for the both of us to be active, so it won't be. But as far as any—for post-trial motions, I hate to get there, we're at pre-trial motions, but I'm saying any timely motions that should be filed for argument or appeal, I believe it should lay on Mr. Suter's shoulders.

"THE COURT: I'm talking now about objections and the motions.

"MR. DOOLEY: I understand.

"THE COURT: And made at trial. ·

"MR. DOOLEY: Right. Made right at the time; in other words, or forever hold your peace.

"THE COURT: Right.

"MR. DOOLEY: Right. There may be quite a few that are going to get way [sic] from me and also, I think Mr. Suter would be able to warn me in enough time, I understand that. If the Assistant District Attorney, Mr. Buchanan here is constantly using tactics, Mr. Suter can bring it to my attention and then I could be aware of those and maybe get one or two; but I believe he is going to help me, Mr. Suter is going to help me.

"THE COURT: I am glad that you feel that way.

"All right, then we will pass then to the appointment of standby counsel. By the way, I do for purposes of this record, accept your waiver of counsel and I appoint Mr. Suter as standby counsel."

(N.T., March 17, 1981, at 29–33)

This colloquy reflects clearly a knowing decision to waive the right to be represented by counsel for purposes of trial. Appellant expressed a strong desire to represent himself, with the assistance of backup counsel; and the trial court allowed him to do so after making appellant aware of the difficulties inherent in the course he had elected to follow. Appellant is not now entitled to a new trial because the court granted him his wish.

Appellant contends next that pre-trial identification proceedings were so suggestive that in-court identification testimony from the three store clerks should not have been permitted. Peggy Donahue did not participate in any pre-trial confrontation or lineup. There was no reason, therefore, to exclude her in-court identification. Roy Rettig and Steven Mowrey were shown a photographic display on September 16, 1980, but neither eyewitness made a positive identification at that time. At a lineup held in Philadelphia on November 6, 1980, only Mowrey was able to be present. He observed six white males of similar height, weight, complexion and hair color, all of whom were dressed the same. At that time, appellant was represented by a member of the Philadelphia Public Defender's office, who participated by offering both objections and suggestions. The attorney also instructed appellant how to act and how to stand during the lineup. Mowrey, nevertheless, picked appellant from the lineup as the robber. The suppression hearing court found that there had been no inherent suggestiveness in the photographic display or in the lineup. These findings are fully supported by the evidence. All eyewitnesses, moreover, had observed the robber at close range and in good light. Thus, there was a basis for identification separate and independent from the pre-trial proceedings. See: *Commonwealth v. Ferguson*, 327 Pa.

Super. 305, 313, 475 A.2d 810, 814–815 (1984); *Common-wealth v. Leatherbury,* 326 Pa.Super. 179, 191, 473 A.2d 1040, 1046 (1984); *Commonwealth v. Laurenson,* 323 Pa. Super. 46, 59–60, 470 A.2d 122, 128–129 (1983); *Common-wealth v. Green,* 321 Pa.Super. 246, 253, 467 A.2d 1346, 1349–1350 (1983). Their in-court identifications were properly received.

■■■■ The Commonwealth was also permitted to introduce evidence of Mowrey's identification of appellant at the lineup in Philadelphia. Contrary to appellant's contention, the lineup was not defective because he was represented by an attorney who was a member of the Philadelphia Public Defender's staff. Appellant had not then been arrested for offenses in Bucks County. As such, he was not entitled to representation by an attorney appointed by the court in Bucks County. See: *Commonwealth v. Ferguson, supra* 327 Pa.Super. at 313 n.4, 475 A.2d at 814 n.4; *Common-wealth v. Zabala,* 310 Pa.Super. 301, 312–316, 456 A.2d 622, 628–629 (1983). Moreover, the record does not disclose any reason for holding ineffective the assistance rendered to appellant by Philadelphia counsel. The Commonwealth's evidence of the lineup was properly received. It did not prejudice appellant unfairly.

■■■■ The law is clear "that a brief, accidental sighting of a defendant in custodial trappings, without more is not so inherently prejudicial as to significantly impair the presumption of innocence to which a defendant is entitled." *Commonwealth v. Miller,* 247 Pa.Super. 132, 138, 371 A.2d 1362, 1365 (1977). See also: *Commonwealth v. Evans,* 465 Pa. 12, 15–16, 348 A.2d 92, 94 (1975); *Commonwealth v. McGonigle,* 228 Pa.Super. 345, 352, 323 A.2d 733, 736 (1974). Therefore, the trial court did not err when it denied appellant's motion for mistrial on the basis of his unsworn statement, made immediately prior to the court's charge to the jury, that three jurors had inadvertently seen him in restraints. This is particularly so where, as here, appellant

had previously told the jury during his opening statement that he was in custody.[5]

During examination of Detective Dunner by the prosecuting attorney, the following exchange took place:

Q. You did some investigation on this case then?

A. Yes, I did.

Q. Directing your attention to September of 1980, did you have any contact with the Philadelphia Police Department concerning this case and concerning this defendant?

A. Yes.

(N.T. at 45). The trial court interrupted the examination and cautioned the prosecutor that "under no circumstances are you going to elicit from him [the detective], nor are you going to put him in a position, where he may blurt out or volunteer his contact with the Philadelphia Police Department in relation to this particular suspect." (N.T. at 46). No such further references were made on direct examination.

▮▮▮▮ Appellant contends that he was deprived of a fair trial by the prosecutor's questions and that the trial court should have declared a mistrial. The question asked by the District Attorney, he contends, suggested his involvement in prior criminal offenses. His argument lacks merit.

In the first place, appellant did not request a mistrial. Secondly, he, himself, told the jury, during direct testimony, of his criminal record.[6] Even if the question can be construed as a reference to prior criminal activity, therefore, it was harmless. Most significantly, however, the question was not calculated to reveal appellant's prior criminal record and did not in fact imply the existence of such a record. Indeed, the question referred specifically to a contact with Philadelphia police "concerning this case and this

5. Although a cautionary instruction to the jury would have been appropriate if appellant had requested one, the record discloses that no such request was made.

6. His apparent purpose was to show the jury that he was not a robber.

defendant." A reference such as this can be found prejudicial "only if [it] conveys to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense." *Commonwealth v. Penn,* 497 Pa. 232, 243, 439 A.2d 1154, 1160, *cert. denied,* 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982), quoting *Commonwealth v. Povish,* 479 Pa. 179, 188, 387 A.2d 1282, 1287 (1978). The prosecutor's question in this case did not imply a prior criminal offense.

The judgment of sentence is affirmed.