500 A.2d 1182

**COMMONWEALTH of Pennsylvania**

**v.**

**Angel ROMAN, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 5, 1985.

Filed Nov. 15, 1985.

---

530

Thomas D. Heberle, Erie, for appellant.

Ernest J. DiSantis, Jr., Assistant District Attorney, Erie, for Com., appellee.

Before WIEAND, POPOVICH and LIPEZ, JJ.

WIEAND, Judge:

In this appeal, Angel Roman argues that he was improperly forced to proceed to trial without counsel. We agree. Therefore, we reverse and remand for a new trial.

As a result of incidents occurring on May 4 and May 9, 1984, Roman was charged with two counts each of the following: driving while under the influence of alcohol or a controlled substance;[1] driving on roadways laned for traffic;[2] driving while his operating privilege was suspended or revoked;[3] and driving an unregistered vehicle.[4] Attorney William Morton, a member of the Erie County Public Defender's Office, initially undertook to represent Roman. However, on August 16, 1984, prior to trial, Morton filed a petition requesting leave of court to withdraw as Roman's counsel. The petition contained averments that Roman had said he did not want Morton to represent him and that it was therefore impossible to maintain an attorney-client relationship. The record does not disclose that Roman, if present when the petition was presented to the court, was then advised of his right to be represented by counsel. Similarly, it does not appear that a penetrating and compre-

1. 75 Pa.C.S. § 3731(a).
2. 75 Pa.C.S. § 3309.
3. 75 Pa.C.S. § 1543(a).
4. 75 Pa.C.S. § 1301.

hensive inquiry was made with respect to his understanding of this right. Nevertheless, on the same day, the trial court entered an order allowing counsel to withdraw his representation.

On September 10, 1984, the date set for trial, Roman appeared and waived the right to trial by jury. Trial without jury was set for September 18, 1984. When Roman appeared for trial on that day, the following colloquy took place.

THE COURT: .... I understand you do not have an attorney, Mr. Roman.

MR. ROMAN: No, sir.

THE COURT: You had one and you wanted to handle the case yourself; is that correct?

MR. ROMAN: No, sir, I—

THE COURT: You what?

MR. ROMAN: I dismissed him because there was some loss of interest on my part.

THE COURT: Didn't you have an attorney at one time, Mr. Morton?

MR. ROMAN: Yes.

THE COURT: And you didn't want him to handle it for you?

MR. ROMAN: There was a disagreement.

THE COURT: Yes, and you were offered another attorney and you said you wanted to handle it yourself three different times.

MR. ROMAN: I was not offered a different attorney.

THE COURT: I understand three different times you were offered an attorney and wanted to handle it yourself.

MR. ROMAN: Your Honor, that's not true. After I dismissed Mr. Morton, there was no other—

MR. BLACKWOOD [Assistant District Attorney]: Why don't you come up to the bar?

THE COURT: You said you didn't want Mr. Morton, you had a disagreement with him?

MR. ROMAN: We had a disagreement and I didn't want him to, whatever, let him defend me anymore. But about the other part of they offered me another lawyer, that's not true.

THE COURT: I was told that you said you wanted to handle this yourself and you were told three different times to get a lawyer and you didn't want one.

MR. ROMAN: I haven't got one, that's true; but I was offered another, that was not true.

THE COURT: Did you apply to the Public Defender? Are you working?

MR. ROMAN: No, I not working.

THE COURT: Do you have any income?

MR. ROMAN: No, I have no income.

THE COURT: How do you live?

MR. ROMAN: Well, my wife work.

THE COURT: But did you go to the Public Defender's office and ask for a lawyer? Is that where you got Mr. Morton, up at the Public Defender's?

MR. ROMAN: I talked with Mr. Manzi.

THE COURT: Yes.

MR. ROMAN: He was the one who say—

THE COURT: And he got Mr. Morton for you, that's the Public Defender.

MR. ROMAN: Right.

THE COURT: Well, the problem is you had your chance for a lawyer and, as I understood it, you didn't want one. Are you in on this at all, Mr. Blackwood?

MR. BLACKWOOD: I have notes in the file, Your Honor, that he has indicated that he intended to defend himself. He discharged Mr. Morton and he intends to defend himself. He said that to the Court I think three times now.

THE COURT: Judge Jiuliante's courtroom?

MR. BLACKWOOD: The notes I have—Mr. Agresti was there, not I. At this time, too, Your Honor, we wrote

to him on August 23rd. And, at the time, he had written to Greg Orlando and he had asked for a continuance.

We said there is no grounds for a continuance. We advised him that he had four weeks until the September term to obtain new counsel, as Mr. Morton had been discharged by him.

Mr. Trombetta again urged him, you either get an attorney on your own or make an application to the Public Defender's office. This is on August 23rd. Instead, Mr. Roman came here and indicated he was not going to get an attorney, he was going to represent himself.

And I think that's what he is here to do today; is that correct?

MR. ROMAN: That's not true.

THE COURT: We will have to proceed on that basis. You have been stalling this as much as we possibly can, so we will start the case.

(N.T. 9/18/84, at pp. 3–7).

During an ensuing trial, Roman did not cross-examine the Commonwealth's witnesses and did not call any defense witnesses. He did testify himself. The court found him guilty of twice driving while under the influence of alcohol and of the several summary offenses. Roman, still acting without counsel, filed a post-trial motion in the nature of a motion for new trial, but this was dismissed. A petition to reconsider was denied. When Roman thereafter appeared for sentencing, a continuance was granted to allow him to obtain counsel. On December 31, 1984, while represented by present counsel, Roman was sentenced.[5]

On direct appeal, Roman argues that he did not voluntarily and intelligently waive the right to counsel and that the

---

**5.** Appellant was ordered to pay various fines and costs and was sentenced to two consecutive terms of imprisonment, one not less than two days nor more than one year and the other for not less than thirty days nor more than one year.

534

trial court erred when it failed to conduct an adequate waiver colloquy.[6]

Rule 318(c) of the Pennsylvania Rules of Criminal Procedure has imposed the following requirement:

[w]hen the defendant seeks to waive his right to counsel after the preliminary hearing, *the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary and intelligent waiver of counsel.*

(Emphasis added.)

 In order for a waiver of counsel to be valid, it must be the voluntary and intelligent act of the accused. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938). To be intelligent, a

waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to an understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

*Commonwealth ex rel. McCray v. Rundle*, 415 Pa. 65, 69–70, 202 A.2d 303, 305 (1964), quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321 (1947). See also: *Commonwealth v. Baker*, 318 Pa.Super. 19, 24, 464 A.2d 496, 499 (1983). Although Rule 318(c) does not instruct trial judges regarding the extent of the inquiry to be made of the accused, the comment of the Criminal Rules Committee contains a recommendation that, at a minimum, a judge should elicit the following information:

6. These issues had not been raised specifically in appellant's post-trial motions. Because he was not then represented by counsel, however, it cannot be said that his failure was a knowing and voluntary waiver of the right to raise the issues on appeal. See: *Commonwealth v. Townes*, 300 Pa.Super. 544, 547, 446 A.2d 1293, 1294 (1982).

(1) That the defendant understands that he has the right to be represented by counsel, and the right to have free counsel appointed if he is indigent.

(2) That the defendant understands the nature of the charges against him and the elements of each of those charges.

(3) That the defendant is aware of the permissible range of sentences and/or fines for the offenses charged.

(4) That the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules.

(5) That the defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently.

(6) That the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

See also: *Commonwealth v. Charlett*, 282 Pa.Super. 28, 422 A.2d 659 (1980). See generally: *Commonwealth v. Palmer*, 315 Pa.Super. 601, 608–609, 462 A.2d 755, 758 (1983).

In the instant case, the Public Defender had requested leave of court to withdraw from representing appellant. The court had granted this request without advising appellant of his right to be represented and without making inquiry concerning appellant's understanding of this right. When appellant appeared without counsel and waived the right to trial by jury,[7] the court recommended to appellant that he obtain counsel, either privately retained or court

7. The trial court appointed counsel, who appeared at the jury waiver colloquy, for the limited purpose of explaining to Roman his rights regarding the jury waiver.

appointed, but no further inquiry was conducted at that time.

The record of the colloquy immediately preceding the bench trial speaks for itself. Appellant conceded that he had rejected Morton because of a disagreement. However, he denied that he wished to represent himself and also denied that he had been offered other representation by the Public Defender. That he did not intend to waive the right to be represented by counsel and that he did not wish to represent himself are eminently clear. It is equally clear that neither the trial court nor the prosecuting attorney advised appellant, who admittedly was indigent, that he had the right to have free counsel appointed to represent him. Instead, he was told that he would have to proceed to trial immediately without counsel. He was thus denied the constitutionally guaranteed right to counsel. See and compare: *Commonwealth v. Baker, supra; Commonwealth v. Charlett, supra; Commonwealth v. Hauser*, 265 Pa.Super. 135, 401 A.2d 837 (1979).

The Commonwealth argues that appellant's conduct was dilatory and that it was geared to avoid answering the charges against him. This argument is not supported by the record. Appellant regularly appeared when he was required to do so. The trial was not ever continued at his request. Although appellant, while unrepresented by counsel, sought pre-trial to obtain a delay of trial, his request was denied. He appeared when his case was scheduled for trial by jury and, having waived trial by jury, when his case was scheduled for trial without jury. He did not in any way delay the trial or seek to avoid answering charges. It cannot be said that he was avoiding trial merely because, being indigent, he appeared for trial without counsel.

It is possible, of course, that the disintegration of the relationship between appellant and his first attorney was attributable to appellant. It may also be that his rejection of Morton's representation represented a reluctance to accept anything short of a total dismissal of the charges.

However, it was counsel who withdrew and who did so without fully apprising appellant of his rights. Moreover, the inquiry required by Pa.R.Crim.P. 318(c) was not conducted by the court. It was never explained to appellant that he did not have the right to pick and choose his court-appointed attorney. Similarly, the consequences of proceeding without counsel were never impressed upon him. Even so, the record is clear that he did not want to represent himself and did not voluntarily waive the right to be represented by counsel. Because he was deprived of the right to be represented by counsel, he is entitled to a new trial.

Reversed and remanded for a new trial. Jurisdiction is not retained.