563 A.2d 1236

**COMMONWEALTH of Pennsylvania**

**v.**

**Terry NEAL, Appellant.**

Superior Court of Pennsylvania.

Argued March 30, 1989.

Filed Aug. 23, 1989.

166

David G. Ridge, Erie, for appellant.

Douglas J. Wright, Asst. Dist. Atty., Girard, for Com., appellee.

Before WIEAND, DEL SOLE and MELINSON, JJ.

WIEAND, Judge:

Terry Neal was tried by jury and was found guilty of theft by unlawful taking. Post-trial motions were denied, and Neal was sentenced to serve a term of imprisonment for not less than one (1) year nor more than two (2) years. On direct appeal from the judgment of sentence, Neal contends that the trial court committed reversible error by: (1) requiring him to stand trial while wearing prison clothing; (2) refusing to suppress an inculpatory statement which he had made to police; and (3) denying his motion to dismiss pursuant to Pa.R.Crim.P. 1100. His principal argument, however, is that he was denied his constitutional right to counsel when the trial court dismissed his public defender and required him to proceed pro se with standby counsel.

■ The criminal complaint, signed on October 6, 1986, charged appellant with removing a bank bag containing seven hundred seventy-nine ($779.00) dollars while making a delivery to Lawson's convenience store, Erie, Pennsylvania, on July 9, 1986. Trial began on Friday, May 8, 1987, when a jury was selected to hear evidence, the presentation of which was to begin on Monday, May 11, 1987. At a pre-trial hearing on May 4, 1987, the court had found that the period between February 17, 1987 and March 24, 1987, a period of thirty-six (36) days, was excludable because of a continuance of the preliminary hearing granted on motion of the defense. When this period was excluded, it became clear that the trial against appellant would be commenced within one hundred eighty (180) days after the filing of the

168

complaint.[1]   Therefore, the court denied appellant's motion to dismiss the prosecution.   We find no error therein.

■   Appellant's contention that the trial court erred when it refused to suppress an inculpatory statement which he had made to Trooper Lamont King while in custody is also without merit.   During a separate suppression hearing, Trooper King testified and the trial court found that appellant had been fully advised of his rights under *Miranda*.[2] This finding is binding upon a reviewing court.   See: *Commonwealth v. Neely*, 298 Pa.Super. 328, 341, 444 A.2d 1199, 1205 (1982) ("It is ... exclusively the province of the suppression court to determine the credibility of the witnesses and the weight to be accorded their testimony."). See also: *Commonwealth v. Reynolds*, 300 Pa.Super. 143, 446 A.2d 270 (1982); *Commonwealth v. Butch*, 257 Pa.Super. 242, 390 A.2d 803 (1978).   Appellant's contention that Trooper King's testimony should not have been received because it was not corroborated by other evidence suggests a misunderstanding of the law.   The testimony was properly received, and its credibility was for the trial court.   There is here no basis for an appellate court to disturb the finding of the trial court.

■   Appellant next contends that he was forced to go to trial in prison clothing.   Concerning such a claim, the United States Supreme Court has said that "the courts have refused to embrace a mechanical rule vitiating any conviction, regardless of the circumstances, where the accused appeared before the jury in prison garb.   Instead they have recognized that the particular evil proscribed is compelling a defendant, against his will, to be tried in jail attire." *Estelle v. Williams*, 425 U.S. 501, 507, 96 S.Ct. 1691, 1694–1695, 48 L.Ed.2d 126, 132–133 (1976).   See also: *Bent-*

1.   The record does not disclose that appellant filed a motion to dismiss pursuant to Rule 1100.   However, he did file a motion in opposition to the Commonwealth's petition to extend the time for trial in which he contended that the time period prescribed by Rule 1100 had expired.

2.   *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*ley v. Crist,* 469 F.2d 854 (9th Cir.1972); *Turner v. State,* 473 So.2d 639 (Ala.Cr.App.1985); *People v. Roman,* 35 N.Y.2d 978, 365 N.Y.S.2d 527, 324 N.E.2d 885 (1975).

In *Commonwealth v. Keeler,* 216 Pa.Super. 193, 264 A.2d 407 (1970), the Superior Court granted a new trial where the trial court had refused to grant a continuance to permit a defendant to obtain street clothing for trial. The defendant had been transferred from a state facility to a county prison on the night prior to trial and was unable to obtain civilian clothing prior to the start of trial. Consequently, he was required to wear prison clothing during the selection of a jury. In holding that the trial court had committed reversible error by refusing a defense motion for a continuance to obtain street clothing, the Superior Court reasoned as follows:

> Under our system of criminal justice, defendants are presumed innocent until proven guilty. The burden is on the state to bring forth evidence to overcome that presumption and to prove defendant guilty beyond a reasonable doubt. Such evidence, however, must be competent and probative. It cannot rely for its value upon prejudice and fear. It cannot insinuate without rationale. See, e.g., *Commonwealth v. Trowery,* 211 Pa.Super. 171, 235 A.2d 171 (1967); *Commonwealth v. Bruno,* 215 Pa.Super. 407, 258 A.2d 666 (1969).

> "A defendant in prison garb gives the appearance of one whom the state regards as deserving to be so attired. It brands him as convicted in the state's eyes. It insinuates that the defendant has been arrested not only on the charge being tried but also on other charges for which he is being incarcerated.

> . . . .

> The presumption of innocence requires the garb of innocence, and regardless of the ultimate outcome, or the evidence awaiting presentation, every defendant is entitled to be brought before the court with the appearance, dignity, and self-respect of a free and innocent man,

except as the necessary safeguard and decorum of the court may otherwise require." [*Eaddy v. People*, 115 Colo. 488], 174 P.2d [717] at 718–719 [ (1946) ]. See also: *Commonwealth v. Reid*, 123 Pa.Super. 459, 467–468, 187 A. 263 (1936).

*Commonwealth v. Keeler, supra*, 216 Pa.Superior Ct. at 195–198, 264 A.2d at 409–410. See also: *Commonwealth v. Kellum*, 339 Pa.Super. 513, 489 A.2d 758 (1985).

In the instant case, appellant had ample opportunity to obtain civilian clothes but failed to do anything to obtain them. In fact, when civilian clothes were made available to appellant by Erie County Prison officials, he declined to accept them. In finding that there was no merit in appellant's claim that he had been forced to stand trial in prison clothes, the trial court observed:

> Here, the defendant was not supplied with civilian clothes when he was transferred from Western Penitentiary. The Erie County Prison officials attempted to provide civilian clothes for the defendant, but the defendant refused to try them on. The defendant and his then defense counsel were given three days advance notice of the date of jury selection but did not make any arrangements to obtain civilian clothes. [Pre–Trial Colloquy Transcript, May 8, 1987, pp. 2–7; Motion to Dismiss Counsel Transcript, May 11, 1987, pp. 16–18]. Additionally, even though jury selection began on May 8, 1987, the trial did not actually begin until May 12, 1987 thereby affording the defendant four more days to obtain other clothing.
>
> Finally, we determined on the record that clothing worn by the defendant was not denotive of prison garb, was not similar to Erie County Prison uniforms, and was equivalent to ordinary work clothes. [Pre–Trial Colloquy Transcript, May 8, 1987, pp. 10–11].

(Trial Court Opinion at p. 6).

The trial court's observations are supported by the record. We conclude, therefore, that a defendant who has had ample opportunity to obtain civilian clothing prior to

trial, and who has refused to wear such clothing offered to him, may not complain post-trial that he was compelled to stand trial in prison garb. This is particularly so where, as here, the trial judge who was present and observed appellant concluded that the clothing worn by appellant did not appear to be prison garb and, in fact, appeared to be ordinary work clothes. We perceive in these circumstances no basis for setting aside the jury's verdict because of appellant's attire during trial.

After the jury had been selected on Friday afternoon but before the opening of court on the following Monday morning, the trial judge received a letter from appellant in which he requested that his public defender be dismissed and new counsel appointed. Upon the opening of court, therefore, a hearing was held outside the presence of the jury to determine appellant's request for new counsel. At this hearing, appellant complained that his counsel had met with him infrequently and had failed to file pre-trial motions for the discovery and suppression of evidence. His counsel testified in rebuttal that she had had extensive conversations with appellant about the case and was thoroughly familiar with it and prepared to proceed to trial. She said that she had obtained all discoverable material but that there was no basis for suppressing the inculpatory statement which appellant had made to Trooper King.

After the testimony had been received, the following colloquy was conducted:

THE COURT: ....

Mr. Neal, what we now come down to, then, is your determination to be made. If you still insist that you did not wish to be represented by Attorney Moffett, I'll honor that request. I'll tell you, however, that on the basis of what I have received here, I'm not amenable to continuing this matter or to appoint other counsel for you. I may very well appoint second counsel, someone to assist you, should you determine to proceed by yourself in this case, which is your absolute right, of course, but I'm not going to remove Attorney Moffett from the case without

your direction to do so and I'm not going to appoint someone else to represent you under these circumstances. I'll leave that to you as to what you wish to have done.

THE DEFENDANT: As I clearly stated in the letter, Your Honor, I don't have the confidence that Miss Moffett is going to represent me correctly. The times we have encountered each other, I don't know if my assertive personality intimidated her, because it was not intending that. It was only due to the seriousness in which I see the situation. I don't feel that she has my best interest at heart and I'm in a situation now where, as I said, I feel that I still have my rights to have pretrial motions placed and I have no knowledge of how to be able to do this in writing and I do need counsel. I don't feel confident with her or the Public Defender's office now, especially after—as a result of my allegations here today in the letter. I'm totally afraid of being able to go to trial with her and any effort to try to defend me as—even as second or just to be present so that my rights are observed. And I think that I have some strong issues that should be pursued before I even have to go to trial, specifically that Miranda—where I said my rights weren't given to me whatsoever. I never signed anything, there was never a discussion I ever had with Trooper King.

THE COURT: You have the right to have a determination made on the question of Miranda rights being afforded you and would so do that if that occurs and I'll do that prior to trial.

THE DEFENDANT: Yes, sir.

THE COURT: The question now is whether or not you wish to dismiss Miss Moffett as your attorney and accordingly, the entire Public Defender's office and—

MS. MOFFETT: You can go right ahead, I'd be more than happen [sic] to withdraw from this case.

THE DEFENDANT: See, this is what I'm saying, you heard. Her attitude is belligerent and I'm feeling I don't have any rights.

THE COURT: I don't find her attitude to be belligerent, but responsive to the accusations you have made. I'm going to honor your request, I'm going to relieve Miss Moffett of her representation in this case. It makes no sense to have her represent you if you don't have confidence in her, but I'm following up with what I just told you, I'm not going to appoint other counsel to represent you. I will attempt to locate counsel to serve in assistance to you, but it's going to be your place to try—

THE DEFENDANT: But I have no knowledge of how, Your Honor, I'm not able to defend myself. I have no knowledge of how to put any motions, how to do anything along these lines.

THE COURT: Mr. Neal, you have come in the day of the trial after a jury has been selected saying you want to dismiss your counsel.

THE DEFENDANT: Yes, sir.

THE COURT: If you have had these problems of long standing, as you have indicated that you have had, then you could have presented this motion a long time ago.

THE DEFENDANT: That's just the point I was trying to make in this letter, that this isn't an effort on my part, some tactic to try and delay anything. As you can see, the letter was dated the 5th, it was right after the jury selection itself. I have been hoping all the way up to this point that I would be seeing some effort or some good faith effort on her part to really try to defend me in this case, because I'm not testifying to this, but even up to the point of the selection of the jury, I'm trying to make points too, because I see that I'm not going to see her after this, I'm going to see her the day of the trial, which is just happening now. She is telling me it's Friday afternoon, the Courts are closed. Can I speak with you for at least a half an hour upstairs before you leave? She tells me no, I'll see you Monday. I said the trial is Monday. She said, well, I'll see you before the trial; that like was the last that I could see that I'm being taken to Court by an attorney who I feel hasn't properly made the

effort to defend me. Even though she says she understands the case, I feel she is not looking at the correct points.

THE COURT: Well, of course, you may well have that problem with any attorney who represented you, but from what Attorney Moffett states about her familiarity with the case, beginning with the preliminary hearing up through all of the other proceedings on this, I don't see anything to indicate that she has not represented you properly in this thing.

(N.T. May 11, 1987 at pp. 19–23).

The court thereafter dismissed appellant's counsel from the case, directed that appellant proceed to trial pro se, and appointed standby counsel to assist appellant by answering questions pertaining to procedure and evidentiary matters. During trial, it was appellant who conducted examination and cross-examination of witnesses and who addressed the jury.

"Both the United States Supreme Court and the Pennsylvania Supreme Court have consistently ruled that legal counsel 'is an absolute necessity in a criminal trial....'" *Commonwealth v. Atkins*, 233 Pa.Super. 202, 206, 336 A.2d 368, 371 (1975), quoting *Commonwealth v. Kennedy*, 451 Pa. 483, 488, 305 A.2d 890, 893 (1973). See also: *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Therefore, an indigent defendant has an absolute right to free counsel. However, he is not entitled to free counsel of his choice. *Commonwealth v. Olivencia*, 265 Pa.Super. 439, 447, 402 A.2d 519, 522 (1979). See also: *Commonwealth v. Tyler*, 468 Pa. 193, 360 A.2d 617 (1976); *Commonwealth v. Johnson*, 428 Pa. 210, 236 A.2d 805 (1968); *Commonwealth v. Knapp*, 374 Pa.Super. 160, 542 A.2d 546 (1988); *Commonwealth v. Person*, 345 Pa.Super. 341, 498 A.2d 432 (1985); *Commonwealth v. Fleming*, 332 Pa.Super. 118, 480 A.2d 1214 (1984). The "right to counsel does not give [a defendant] the right 'to delay the trial indefinitely because he is dissatisfied with

competent counsel appointed by the court, ready and willing to represent him.' " *Commonwealth v. Stiles,* 229 Pa.Super. 411, 417, 323 A.2d 841, 844 (1974), quoting *Commonwealth v. Puntari,* 198 Pa.Super. 70, 71, 181 A.2d 719, 720 (1962). Even where a defendant has attempted to use his right to counsel in such a manner as to delay the administration of justice, "a court is still not empowered to require a defendant to proceed without counsel at a critical stage of a criminal prosecution without first ascertaining that the defendant is aware of the dangers of pro se representation and then affording him the opportunity to reconsider his decision to proceed pro se." *Commonwealth v. Fowler,* 271 Pa.Super. 138, 144 n. 6, 412 A.2d 614, 616 n. 6 (1979).

■ Pa.R.Crim.P. 316(c)(ii) provides that "[a] motion for change of counsel by a defendant to whom counsel has been assigned, shall not be granted except for substantial reasons." Whether to grant a defendant's petition to replace court appointed counsel is a decision which is left to the sound discretion of the trial court. *Commonwealth v. Segers,* 460 Pa. 149, 154, 331 A.2d 462, 465 (1975). See also: *Commonwealth v. Williams,* 514 Pa. 62, 522 A.2d 1058 (1987); *Commonwealth v. Person, supra; Commonwealth v. Bell,* 328 Pa.Super. 35, 476 A.2d 439 (1984); *Commonwealth v. Tuck,* 322 Pa.Super. 328, 469 A.2d 644 (1983). As a general rule, however, a defendant must show irreconcilable differences between himself and his court appointed counsel before a trial court will be reversed for abuse of discretion in refusing to appoint new counsel. See: *Commonwealth v. Knapp, supra* (defendant's allegation that he and counsel had a strained relationship was not sufficient to justify appointment of new counsel); *Commonwealth v. Chew,* 338 Pa.Super. 472, 487 A.2d 1379 (1985) (mere difference of opinion concerning trial strategy or brevity of pre-trial communications does not compel the appointment of new counsel); *Commonwealth v. Johnson,* 309 Pa.Super. 117, 454 A.2d 1111 (1983) (defendant's asserted lack of confidence in court appointed counsel's attitude was not

sufficient reason for appointment of new counsel). Compare: *Commonwealth v. Tyler, supra.*

"Of course, a criminal defendant also has a constitutional right to dispense with counsel altogether and to defend himself." *Commonwealth v. Szuchon,* 506 Pa. 228, 250, 484 A.2d 1365, 1376 (1984). See also: *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Commonwealth v. Davis,* 479 Pa. 274, 388 A.2d 324 (1978). In such a case, however, "the waiver of the right to counsel must appear from the record to be a knowing and intelligent decision made with full understanding of the consequences." *Commonwealth v. Szuchon, supra* 506 Pa. at 250, 484 A.2d at 1377. See also: *Faretta v. California, supra; Commonwealth v. Davis, supra; Commonwealth v. Tyler, supra; Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa. 515, 204 A.2d 439 (1964); *Commonwealth ex rel. McCray v. Rundle,* 415 Pa. 65, 202 A.2d 303 (1964). Cf. *Argersinger v. Hamlin, supra* 407 U.S. at 37, 92 S.Ct. at 2012, 32 L.Ed.2d at 538 ("[A]bsent a knowing and intelligent waiver, no person may be imprisoned for any offense ... unless he was represented by counsel at his trial."). Therefore, "[w]hen the defendant seeks to waive the right to counsel ... the judge shall ascertain from the defendant, on the record, whether this is a knowing, voluntary and intelligent waiver of counsel." Pa.R.Crim.P. 318(c).

In order for a waiver of counsel to be valid, it must be the voluntary and intelligent act of the accused. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938). To be intelligent, a

waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to an understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from

a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered. *Commonwealth ex rel. McCray v. Rundle*, 415 Pa. 65, 69–70, 202 A.2d 303, 305 (1964), quoting *Von Moltke v. Gillies*, 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321 (1947). See also: *Commonwealth v. Baker*, 318 Pa.Super. 19, 24, 464 A.2d 496, 499 (1983). Although Rule 318(c) does not instruct trial judges regarding the extent of the inquiry to be made of the accused, the comment of the Criminal Rules Committee contains a recommendation that, at a minimum, a judge should elicit the following information:

(1) That the defendant understands that he has the right to be represented by counsel, and the right to have free counsel appointed if he is indigent.

(2) That the defendant understands the nature of the charges against him and the elements of each of those charges.

(3) That the defendant is aware of the permissible range of sentences and/or fines for the offenses charged.

(4) That the defendant understands that if he waives the right to counsel he will still be bound by all the normal rules of procedure and that counsel would be familiar with these rules.

(5) That the defendant understands that there are possible defenses to these charges which counsel might be aware of, and if these defenses are not raised at trial, they may be lost permanently.

(6) That the defendant understands that, in addition to defenses, the defendant has many rights that, if not timely asserted, may be lost permanently; and that if errors occur and are not timely objected to, or otherwise timely raised by the defendant, these errors may be lost permanently.

See also: *Commonwealth v. Charlett*, 282 Pa.Super. 28, 422 A.2d 659 (1980). See generally: *Commonwealth v.*

*Palmer,* 315 Pa.Super. 601, 608–609, 462 A.2d 755, 758 (1983).

*Commonwealth v. Roman,* 347 Pa.Super. 528, 534–535, 500 A.2d 1182, 1185–1186 (1985). See also: *Commonwealth v. Thier,* 354 Pa.Super. 7, 510 A.2d 1251 (1986), *cert. denied,* 484 U.S. 846, 108 S.Ct. 142, 98 L.Ed.2d 98 (1987); *Commonwealth v. Dooley,* 332 Pa.Super. 227, 481 A.2d 336 (1984); *Commonwealth v. Hauser,* 265 Pa.Super. 135, 401 A.2d 837 (1979).

It is not difficult to empathize with the trial court's frustration when appellant, after a jury already had been selected, sought the dismissal of his lawyer and the appointment of new counsel. Appellant was unable to demonstrate irreconcilable differences between himself and his lawyer, and his request to replace counsel may well have been calculated to delay the trial. Under the circumstances, the trial court would not have abused its discretion by denying appellant's request to dismiss his public defender. The trial court committed error, however, when it excused counsel from representing appellant and forced appellant to proceed pro se. That appellant did not want to proceed pro se is clear. He told the court that he did not know how to defend himself and had no knowledge regarding "motions, how to do anything along these lines." In the face of this, it is clear that appellant did not voluntarily waive the right to be represented by counsel. Instead, he was literally forced by the court to represent himself without being apprised of the consequences and pitfalls thereof. This, the courts have refused to countenance.

In *Commonwealth v. Grant,* 229 Pa.Super. 419, 323 A.2d 354 (1974), the defendant appeared on the date set for trial and expressed a desire to dismiss the public defender who had been appointed to represent him. The trial court told the defendant to fire his counsel, which he did. Although the defendant requested that new counsel be appointed to represent him, the trial court denied the request and informed him that he would have to represent himself. Under these circumstances, the Superior Court determined

that the defendant had been denied his constitutional right to representation by counsel. In reaching this conclusion, the Superior Court determined that an adequate colloquy had not been conducted to ensure a voluntary and intelligent waiver, and further reasoned as follows:

It is also evident from the record that appellant's waiver of right to counsel was not voluntary. Waiver may not be found from the appearance of appellant without counsel, *Rice v. Olson,* 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367 (1945), or from the failure to request counsel. *Carnley v. Cochran,* [369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962)], *supra.* See *Commonwealth ex rel. Goodfellow v. Rundle,* 415 Pa. 528, 204 A.2d 446 (1964). The colloquy indicates that appellant merely informed the court that he wanted private counsel appointed, and did not make a precise request to represent himself. When appellant's request was denied, he was directed by the trial judge, without further advice, to fire the public defender and represent himself. When appellant hesitated in confusion, the court pressed him: "Go ahead and tell him he is fired." As a result of this colloquy, the appellant did not voluntarily waive his right to counsel, but rather appellant acquiesced in the waiver only after prodding by the trial judge. Cf. *Commonwealth v. Evans,* 434 Pa. 52, 252 A.2d 689 (1969).

Appellant may not frustrate or obstruct the orderly procedure of the court and the administration of justice by continual insistence o[n] representation by private counsel, even though unable to afford such representation, or the continual refusal of the services of the public defender. *See United States ex rel. Fletcher v. Maroney,* 280 F.Supp. 277 (W.D.Pa.), *cert. denied,* 393 U.S. 873, 89 S.Ct. 164, 21 L.Ed.2d 142 (1968); *Commonwealth v. Puntari,* 198 Pa.Super. 70, 181 A.2d 719 (1962). However, as in the instant case, the intransigent behavior by the appellant does not negate the requirement for a full and complete colloquy in order that appellant may make a competent and intelligent waiver of his right to counsel.

*Commonwealth v. Grant, supra* 229 Pa.Super. at 426–427, 323 A.2d at 358–359 (footnote omitted).

A similar determination was made by the Superior Court in *Commonwealth v. Roman, supra.* There, the public defender who had been appointed to represent an indigent defendant was permitted to withdraw from the case prior to trial because of a disagreement between him and the defendant. On the date set for trial, the defendant appeared without counsel and, although clearly expressing that he did not wish to proceed pro se, the trial court refused to appoint new counsel and informed the defendant that he would have to proceed immediately to trial without counsel. Noting that neither the trial court nor dismissed counsel had informed the defendant of his right to have free counsel appointed to represent him, the Superior Court held that the defendant had been denied his constitutionally guaranteed right to counsel. The Court determined additionally that the trial court had failed to conduct an adequate colloquy to ensure that the defendant's waiver of the right to counsel was being knowingly and voluntarily made.

In the instant case, not only is it clear that appellant did not wish to proceed pro se, but it is also clear that the trial court did not explain to appellant the rights he was relinquishing by proceeding to trial without counsel. Under these circumstances, it cannot be said that appellant knowingly and voluntarily gave up his right to be represented by counsel. We are constrained to hold, therefore, that appellant was denied his constitutional right to counsel. Although appellant did not have the right to choose his court appointed counsel, he could not be compelled to proceed pro se after the trial court had granted his request to dismiss the public defender appointed to represent him.

Appellant's constitutional right to counsel was not met by the last minute appointment of a lawyer to sit with appellant but not participate in the trial. Appellant was forced to represent himself during the trial, and standby counsel, who was previously unfamiliar with the case, did not play a significant role. His mere presence did not fulfill the right

to counsel which the Constitution guarantees. To correct the erroneous denial of appellant's right to counsel, a new trial is necessary.

Reversed and remanded for a new trial. Jurisdiction is not retained.