Commonwealth of Pennsylvania v. J. James Eagan, alias J. James Smith, Appellant.

*Criminal law—Murder—Motion to quash array of grand jurors.*

A motion to quash the array of grand jurors in a murder case will not be entertained after a plea of guilty has been entered, where it appears that the case had previously been continued for the express purpose of allowing such a motion to be made, and that the prisoner had had ample time to make the motion, and where there is no proof that the jury wheel was tampered with, or that there was any irregularity in selecting the jury.

*Criminal law—Murder—Bill of particulars.*

In a murder case the district attorney will not be required to file a bill of particulars where it appears that the prisoner and his counsel were present at the preliminary hearing before the justice of the peace and heard all the testimony deemed necessary to procure the commitment for the crime charged in the indictment.

*Criminal law—Murder—Jury—Challenge.*

A juror having testified on his voir dire that he had formed a fixed opinion as to the prisoner's guilt or innocence was further asked if he could render a verdict impartially upon the evidence, to which he answered, " I think I could." *Held,* that it was within the discretion of the trial judge to overrule a challenge to the juror for cause.

The established test of a juror's competency on this ground is whether he can throw aside his impression or opinion and render an impartial verdict on the evidence alone. That question only the juror can answer with certainty, and in passing upon such certainty a reasonable discretion must be left to the judge who heard the answer.

*Criminal law—Murder—Confession.*

A confession made by the prisoner to the district attorney in jail and taken down by a stenographer is admissible in evidence where the affirmative proof is that the confession was entirely voluntary, and that the district attorney cautioned the prisoner that his answers must come of his own free will, and could be used against him.

*Criminal law—Intent—Attempt—Burglary—Murder.*

An attempt, in general, is an overt act done in pursuance of an intent to do a specific thing, tending to the end, but falling short of complete accomplishment of it ; the overt act must be sufficiently proximate to the intended crime to form one of the natural series of acts which the intent requires for its full execution.

On the trial of an indictment for murder the evidence showed that the prisoner and others went to the house of the deceased, took with them a rope, watched the house and, when the deceased came from the house, attacked and beat him and tied him in the barn ; that they then started for the house and entered the yard when they were frightened away by an approaching team. *Held,* (1) that the evidence showed acts done in execution of an admitted intent, sufficiently proximate to justify the judge in submitting to the jury the question of an attempt at burglary, as well as robbery ; (2) that a conviction of murder of the first degree should be sustained.

Argued Jan. 16, 1899.   Appeal, No. 398, Jan. T., 1898, by defendant, from judgment of O. &. T. Susquehanna Co., April T., 1898, No. 1, on verdict of guilty of murder of the first degree. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.   Affirmed.

Indictment for murder.

At the trial before SEARLE, P. J., a motion to quash the array of grand jurors was made for the following reasons :

1. The grand jurors that found the indictment were not a lawful body, nor were they selected and drawn from the jury wheel according to law.

2. The jury wheel was not kept in the custody of the jury commissioners.

3. The jury wheel was not locked and sealed after it was filled, as provided by law.

4. The list of names alleged to have been selected and placed in the jury wheel on December 1, 1897, for the ensuing year, is not properly sworn to by the jury commissioners and president judge, nor is it properly certified to by the said jury commissioners and president judge, as provided by law.

5. The sheriff and the jury commissioners were not properly and lawfully sworn before or at the time of drawing the grand jury.

6. No book was or is kept containing the Christian and surnames of all persons summoned by the sheriff to serve upon said grand jury, and the time of service, as required by law.

7. The jury commissioners failed to furnish a list of said grand. jury to the sheriff and to the clerk of court, to be set up in their respective offices, nor has there such lists been set up in either of said offices for inspection, as provided by law.

The reasons were supported by the following affidavit:

Susquehanna county, ss.: J. James Eagan, alias Smith, being duly sworn according to law, deposes and says that he has just acquired information to found the above exceptions upon, but had no knowledge or information of the same until after April 15, 1898, and the adjournment of all the courts of that term. He expects and is able to prove sufficient facts to sustain each of the above exceptions, and prays the court for an opportunity to do so.

The court overruled the motion in an opinion as follows :

The defendants, or one of them, James Eagan, asks leave to withdraw his plea of not guilty entered by him on April 15, 1898, for the purpose of making a motion relative to quashing the array of grand jurors which found the indictment against him and also the array of petit jurors drawn to try the case at

present term of court. The indictment in this case was found at the sitting of the grand jury two weeks preceding the first day of April term of court. At that time the defendants were brought into court and requested to plead to the indictment. The counsel representing both of the defendants asked to be excused from pleading at that time for the reason that he wished an opportunity to examine the records in the case in relation to the impaneling of the jury and the regularity of the proceeding in order to make such motions in relation to the same as he thought proper before entering the plea. At his request the defendants were excused from pleading at that time, for the express purpose of giving opportunity for the defendants and their counsel to make such investigations in relation to the formation of the jury as desired. At the regular term of court, the case was called for trial, when upon the motion of both of the defendants it was continued to the present term for the reason of the absence of witnesses who, the defendants alleged, were material on their behalf, and that they had had no opportunity to obtain them. The defendants were then arraigned and entered a plea of "not guilty." We think that they had ample time and opportunity between the date of the finding of the bill of indictment and the time they were arraigned to ascertain whether there had been any irregularities which they desired to take advantage of, especially as the time of the arraignment and plea were extended for the express purpose of giving that opportunity. All the irregularities claimed in this case are technical in their nature. There is neither any proof nor allegation that the jury wheel was tampered with by any one or that it was opened by any one from the time the names were selected and placed in the wheel until they were drawn therefrom by the proper officers. There is no proof nor allegation that there was any irregularity sufficient to set aside the panel so far as relates to the filling of the jury wheel. We are therefore of the opinion that this motion for the withdrawal of the plea for the purpose indicated in the motion comes too late, for the reason that the defendants had ample opportunity to make any motions, dilatory or otherwise, which they wished, prior to entering the plea, and the motion to withdraw the plea is therefore refused. The challenge made to the array of grand jurors that were summoned and returned

the indictment on March 29, is overruled, it appearing that the challenge to the array of grand jurors was made subsequent to the plea entered in the case and subsequent to the oppor- tunity to make the challenge, time having been given for that purpose if desired. [1]

Defendant made a motion to quash the indictment, as follows :

"The grand jury which found the indictment were drawn from a jury wheel which on August 9, 1898, was held by the court to have been improperly sealed, as the order of that date in this case will show, and subsequent to that date the entire panel from said wheel was taken out and emptied by order of the court of August 10, 1898, as will show in this case ; therefore, from the evidence which was taken as part of the record in this case, it was shown that the jury wheel had never been properly sealed during any of the time while the names of the grand jurors were contained therein. There was no power in the defendants by a plea to waive the defect of improper care and custody of the jury wheel, and the evidence taken at the former hearing in this case connected with quashing the array of grand and petit jurors is offered in evidence in connection with this motion, as part of the same."

By the Court: Motion overruled. [2]

Defendant presented a petition to the court, alleging that the indictment did not set forth specifically the charge or crime that deponent committed, whether as principal, aider, abettor or counselor, or whether the crime was committed in perpetration or in the attempt to perpetrate any arson, rape, robbery or burglary, with the said Cornelius Shew, the other person named in said indictment, or individually ; and did not set forth in what manner the assault was made upon the said Jack-· son Pepper, or whether said deponent or said Shew severally or jointly assaulted the said Andrew Jackson Pepper, or what instrument was used (if any) in committing the assault and whom by, or whether the instrument was a deadly weapon or not; and did not set forth whether deponent was accessory to the crime or not. It requested that the district attorney file a bill of particulars setting forth fully and at large the particulars pertaining to the foregoing matters, so the deponent might be able to prepare his defense to said indictment ; as he

had not sufficient knowledge at that time to prepare his defense to the crime charged.

By the Court: In this case the defendants were present with their counsel at the hearing before the justice of the peace and heard all the testimony deemed necessary to procure this commitment for the crime charged in the indictment. They entered a plea at April term. Motion refused. [3]

Erastus Ives, a juror, on his voir dire made answers to questions as follows:

By the commonwealth:

"Q. Where do you reside? A. Liberty township. Q. How long have you lived there? A. About forty years. Q. Are you acquainted with James Eagan, the defendant here? A. No, sir. Q. Are you acquainted with Cornelius Shew? A. No, sir. Q. Did you read the account of the Pepper murder and the arrest of these parties? A. Yes, sir. Q. Did you hear the subject talked over? A. Yes, sir. Q. From all that you heard talked and read, did you form any fixed opinion as to the guilt or innocence of James Eagan? A. Yes, sir. Q. You did form an opinion? A. Yes, sir. Q. Notwithstanding all that you have heard and read, can you go into the jury box as a juror and render a verdict impartially upon the evidence and upon that alone, as you shall hear it in this court room, uninfluenced by any opinion or impression that you have formed? A. I think I could. Q. Have you any scruples of any kind regarding capital punishment? A. No, sir."

The commonwealth passed the juror.

By defendant: "Q. That opinion which you formed was somewhat of a fixed opinion, was it not? A. Yes, sir. Q. You still have that same opinion which you formed at the time of reading the accounts? A. Yes, sir, I think I do."

The court overruled the prisoner's challenge for cause. [4]

Selden Munger presented a paper purporting to be a confession made by the prisoner, which is as follows: "My name is J. James Eagan. I have lived with a family named Smith, and was called Smith from a child. On Monday, October 18, Shew and I left Susquehanna, arrived at Rush Tuesday afternoon. We went to the barn and looked around, we intended waiting until they went to bed and then get the money, and then when the old gentleman went to the barn to husk corn we saw him

there.   Shew suggested that it would be better to overcome
him there.   He had a club but threw it away near the barn.
He found a whiffletree near the barn and took it inside the barn
with him.   Shew hit Pepper with the club.   I heard him hit
Pepper.   Then they had a struggle and he hit him two or three
times.   I was inside the barn when he hit him.   Then I bound
him.   Shew held his hands and feet.   He, Pepper, was groan-
ing quite loud and Shew gave me a handkerchief which I put
in his mouth, Shew tied the handkerchief in his mouth.   Then
we went outside, and after we were outside we heard Pepper
groan.   Shew went inside and hit him again.   Shew went back
in the barn three times in all.   We started to go to the house.
Shew wanted to go in and tie up the old lady and rob the house;
but I had had enough of it and would not go.   I am twenty-
three years old, was born in Windsor, Broome county, N. Y.   I
have freely, and without promise of reward of any nature from
any one, made the above statement, and also sign and affix my
name hereto, on this 24th day of January, A. D. 1898.   J. James
Eagan.

" In presence of F. L. Leonard & T. J. McMahon."

Defendant objected to its admission.

The court admitted the paper in evidence. [5]

Miss Frances Ammerman was permitted under objection and
exception to read her shorthand notes of the conversation with
the prisoner and the district attorney, Mr. Ainey, alleged to
have taken place at the same time and place that the statement
was made to Selden Munger above referred to. [6]

The court charged in part as follows:

[The confession or admissions of the prisoner have been tes-
tified to in your hearing, and you will remember them as well as
the court.   You will remember what that confession contained.
You are to take that confession in its entirety.   Take all that the
witness has said in relation to it, both in the written confession
offered in evidence and also what has been given in evidence by
the witnesses as to what he said.   You are to give such weight
to it as in your judgment it is entitled to.   You are to take in
connection with it all the other evidence offered in the case,
and to note how far it is corroborated by other established
facts.] [7] . . . .

In order to constitute an attempt to commit the crime of robbery it is not necessary that any property should be taken. An assault upon a person with intent to take his property from his person or in his presence against his will by violence or putting him in fear is sufficient to constitute an attempt to commit the crime of robbery, and the unlawful and malicious killing of another in making such an attempt to perpetrate a robbery, under our act of assembly would constitute murder in the first degree, although there was no specific intent to take life. . . . In order to constitute the offense of attempting to perpetrate the crime of burglary, it is not necessary that there should be an actual breaking or entry into the dwelling house.

[Where the intent to commit the crime of burglary exists, and in furtherance of such intent, there is an attempt to break and enter the dwelling house by going to such dwelling house, and the breaking and entering the house is interfered with by the presence of the owner near the same, an assault upon the owner in order to obtain access to the house is an attempt to perpetrate such crime, although there is no actual breaking and entry of the dwelling house, and the malicious and unlawful killing of the person in such attempt to perpetrate the crime of burglary would constitute the crime of murder of the first degree under our act of assembly.] [8]

[Where two persons are jointly engaged in the commission of a felony, the acts of either, in the presence of the other, are chargeable upon both.] [10] . . . .

If you find that the injuries inflicted were inflicted by the prisoner at the bar or his associate in his presence and with his consent, unlawfully, wilfully and maliciously, that they were inflicted wilfully, deliberately and premeditately, as I have described to you in the definition of murder in the first degree, then your verdict should be guilty of murder in the first degree.

Verdict of guilty of murder of the first degree upon which sentence was passed.

*Errors assigned* among others were (1) refusing to quash the array of grand jurors; (2) refusing to quash the indictment; (3) refusing to order a bill of particulars; (4) overruling prisoner's challenge to juror Ives; (5, 6) admission of confessions; (7, 8, 10) above instructions, quoting them.

*T. J. Davies,* for appellant.—The array of the jury should have been quashed: Kittanning Ins. Co. v. Adams, 110 Pa. 553; Curley v. Com., 84 Pa. 151; Kell v. Brillinger, 84 Pa. 276; Com. v. Delamater, 13 Pa. C. C. R. 152.

If the array of grand jurors had been quashed, then that of itself would quash the indictment against prisoner: Brown v. Com., 73 Pa. 330.

The court erred in refusing to direct district attorney to file a bill of particulars: Goersen v. Com., 99 Pa. 398.

The challenge of juror Ives should have been sustained: Staup v. Com., 74 Pa. 458; Allison v. Com., 99 Pa. 17; Clark v. Com., 123 Pa. 574.

The alleged confession should have been rejected: Com. v. Shaffer, 178 Pa. 414; Com. v. Wilson, 186 Pa. 1; Com. v. Harman, 4 Pa. 270.

If a person enters a house by night-time, by an open door, with intent to steal, and is pursued, whereby he opens another door to escape, it is not burglary in Pennsylvania: Rolland v. Com., 82 Pa. 324; United States v. Stephens, 3 Criminal Law Magazine, 536; Stabler v. Com., 95 Pa. 318; Com. v. Kelly, 1 Grant, 484.

If the common design was not to take life, but to do great bodily harm, and death resulted, the offense would be murder in the second degree: Com. v. Neills, 2 Brewster, 558; Reg. v. Harrington, 5 Cox C. C. 231; Reg. v. Caton, 12 Cox C. C. 624.

*W. D. B. Ainey,* with him *A. H. McCollum,* for appellee.— The refusal to quash the array was proper: Com. v. Freeman, 166 Pa. 332; Curley v. Com., 84 Pa. 151; Klemmer v. R. R., 163 Pa. 521; Campbell v. Com., 84 Pa. 187; Com. v. Valsalka, 181 Pa. 17.

The refusal to order bill of particular was proper: Williams v. Com., 91 Pa. 493; Com. v. Buccieri, 153 Pa. 547.

The challenge to juror Ives was properly overruled: Clark v. Com., 123 Pa. 555; Ex parte Spies, 35 P. L. J. 215.

The confessions were properly admitted: Com. v. Shaffer, 178 Pa. 414.

It was claimed by the commonwealth that this crime was committed in an attempt to burglarize, or an attempt to rob, or both:

Wharton on Criminal Law (9th ed.), sec. 811; Com. v. Manfredi, 162 Pa. 148; People v. Lawton, 56 Barb. (N. Y.) 126; Rolland v. Com., 82 Pa. 327; Stabler v. Com., 95 Pa. 318.

OPINION BY MR. JUSTICE MITCHELL, February 13, 1899:

That appellant was justly convicted does not admit of question. There is no room for doubt of his guilt or of its degree. But counsel, with excess of zeal not commendable, has raised many questions on the regularity of the proceedings, most of them merely technical and immaterial, and all of them untenable.

The first and second assignments, to the refusal to quash the array of grand jurors and the indictment, and the third, to the refusal to order the commonwealth to furnish a bill of particulars, are sufficiently answered by the learned judge below in making the refusals. If the former needed any authority beyond common sense it would be found in Com. v. Freeman, 166 Pa. 332.

The next assignment is to the overruling of the prisoner's challenge for cause to juror Ives. In answer to questions whether he had read the accounts of the murder and the arrest of the prisoner, had heard the subject talked over and had formed any fixed opinion as to the prisoner's guilt or innocence, the juror answerd " Yes " and on further question whether, notwithstanding all that he had read and heard, he could go into the jury box and render a verdict impartially upon the evidence alone as given in the court room, uninfluenced by any opinion or impression he had formed, he answered, " I think I could." This answer rendered the juror competent, unless from his manner, voice, bearing, etc., the judge was led to doubt the juror's own confidence in his ability to be impartial. In this day of wide spread education and habit of reading, and of the general dissemination of news by the press, it will not do to exclude intelligent and competent men from the jury box because of impressions or even of opinions formed from reading accounts in the newspapers. The established test is whether or not the juror can throw aside his impression or opinion and render an impartial verdict on the evidence alone. That question the juror alone can answer, and the weight of his answer is not to be determined exclusively by his words as they appear in print in the record, but by his words, manner and bearing,

as to which a fair measure of discretion must be allowed to, the court below which had the juror before it. It is argued that the present case fails to meet the test because the juror spoke of his opinion as "fixed" and because his answer was not positive, but only "I think I could." As to the "fixed" character of the opinion, the objection is ruled by Curley v. Com., 84 Pa. 151, where it was held that, notwithstanding the juror's use of the word "fixed" in regard to his opinion, he was competent if he declared he could disregard it and be governed only by the evidence. The juror's answer in the present case, "I think I could," may be construed as implying a doubt on his own part, but not necessarily so. As already said, the construction of the words is largely influenced by the voice, manner and bearing of the speaker. If the latter indicate confidence of his ability and intention to do his duty, he has met the test, notwithstanding the apparent hesitancy of his words. On this subject a reasonable discretion must be allowed to the judge who has the juror before him. In this instance the juror's answers all through indicate a man of intelligence and honest frankness, willing to do his duty and believing himself able. Even if this were less clear than it is we could not say the court was in error in taking that view.

The objections to the admission of the prisoner's confessions, and the charge in relation to them may be dismissed briefly. One of them was a statement written out by a newspaper reporter and signed by the prisoner and the other was a conversation with the district attorney, taken down by his stenographer. It was affirmatively testified to by four witnesses that both statements were entirely voluntary, and it clearly appears by the stenographer's notes that the district attorney before asking any questions at all cautioned the prisoner that his answers must come of his own free will, and could be used against him. There was no denial by the prisoner or by any witness in his behalf. Of course, such statements were admitted by the judge. The fact that the conversation was with the district attorney, and in the jail where the prisoner was confined, was a good reason why the circumstances should be examined, but the mere fact that it was with the officer of the commonwealth did not make it incompetent, in the absence of all evidence that his official position was misused by inducements or threats or duress.

It is the manner and circumstances under which a confession is procured, not the person to whom it is made, that determines its admissibility. ` The motive of the confession is plain. "Conscience doth make cowards of us all." Two confederates, starting out to commit burglary end in doing murder, and being arrested, each in his cowardly haste to throw the burden of the actual killing on the other, makes a confession that incriminates himself.

The elements of murder of the first degree were clearly shown. The confession to Munger states that after they had beaten and tied Pepper in the barn, and had gone out, they "heard him groan, and Shew went in and hit him again. Shew went back in the barn three times in all." ` This, in connection with the nature of the injuries and the other circumstances, was amply sufficient to justify the jury in finding a wilful and premeditated killing, irrespective of the other question as to robbery or burglary.

The remaining assignments, which may be grouped together, raise the only serious question in the case, whether there was sufficient evidence of an attempt, as distinguished from a mere intent, to commit robbery or burglary, or both. The outline of the case as made by the evidence is clear. The two confederates went to the farm of Pepper, hid until night, and watched the house with the intent to break in after the old people had gone to bed, and take their money. While so watching they saw Pepper come out of the house with a lantern and go to the barn across the road, and the confederate suggested that it would be better to overcome him there. Accordingly, they attacked him in the barn, inflicting injuries of which he died, came out without taking the money that was subsequently found to have been on his person, and went across the road towards the house, getting inside the yard, when they were frightened by an approaching team and hurried away. It is beyond dispute that there was an intent to commit burglary, but that it was not carried into complete execution. The question is did it stop at the mere intent, or did it amount to an attempt.

An attempt, in general, is an overt act done in pursuance of an intent to do a specific thing, tending to the end but falling short of complete accomplishment of it. In law, the definition must have this further qualification, that the overt act must be

sufficiently proximate to the intended crime to form one of the natural series of acts which the intent requires for its full execution. So long as the acts are confined to preparation only, and can be abandoned before any transgression of the law or of others' rights, they are within the sphere of intent and do not amount to attempts. Thus the acts of the prisoner in going to Pepper's place and watching his house, and even of preparing the rope to tie him, while undoubtedly done in pursuance of the intent, did not go beyond mere preparation, and had the intent been abandoned at this point, an indictment for an attempt to commit robbery or burglary could not have been sustained. But the moment a blow was struck on Pepper the first step of the actual crime had been taken, and the intent was merged in the attempt. Subsequent abandonment might prevent the completion of the crime, but could not save from the consequences of acts done in the attempt.

Turning now to the evidence, it is undisputed that Pepper was attacked, beaten, gagged and bound in execution of the intent to get his money. The fact that the money on his person was not actually taken is not material on the question of attempt. If it had been taken the crime of robbery would have been complete, and the attempt would have been merged in it, but it does not appear that the prisoner knew that Pepper's money was upon him, and at any rate it was not taken. The crime of robbery therefore was not committed, but that it was attempted was a proper, and indeed unavoidable, inference from the acts done, and the judge was fully justified in submitting the evidence to the jury on that question.

The same result must be reached as to burglary. As already said the original intent was to break into the house after its occupants were asleep and take their money. Preparations were made, the house approached and watched with this intent in view. When Pepper came out with his lantern the prisoner and his confederate made a change, not in their intent, but in their plan of executing it; they attacked and beat him to disable him from resisting their entry of the house; after they had so disabled him they started for the house, crossing the road and entering the yard, still in pursuance of their design to get the money supposed to be in the house; and only abandoned it when frightened by an approaching team. The transaction had

COMMONWEALTH *v.* EAGAN. 23

gone beyond intent and preparation, and had passed into acts
which amounted to an attempt at some crime.   The crime was for
the jury to determine, and that it might be burglary, was so fair
an inference that the prisoner's counsel himself has unwittingly
drawn it in his twenty-third point, " even though the intention
of the prisoner was to fasten, tie and maim the deceased so as to
prevent him from leaving the barn, so as to enable the prisoner to
go to the dwelling house of the deceased to commit a felony there-
in, it would not constitute the crime of robbery or attempted rob-
bery," etc.   Incidit in Scyllam evitare Charybdin.   The evidence
showed acts done in execution of an admitted intent, sufficiently
proximate to justify the judge in submitting to the jury the
question of an attempt at burglary, as well as robbery.   The
distinction between an intent and attempt was stated clearly to
the jury, and the prisoner's rights carefully guarded.   Through-
out the charge there is no trace of. the heat or passion or prej-
udice which such a crime so strongly tends to raise, but the
case was calmly and impartially presented, and we find no error
in it.

The judgment is affirmed and the record remitted for purpose
of execution according to law.

