619 A.2d 719

**COMMONWEALTH of Pennsylvania**

v.

**Peter MELNYCZENKO, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 17, 1992.

Filed Dec. 7, 1992.

Reargument Denied Feb. 5, 1993.

364

Peter Melnyczenko, In pro per.

James J. Karl, Asst. Dist. Atty., Lancaster, for Com., appellee.

Before ROWLEY, President Judge, and JOHNSON and BROSKY, JJ.

ROWLEY, President Judge:

Peter Melnyczenko appeals from the judgment of sentence entered after a jury found him guilty of attempted burglary, loitering and prowling at night time, and possessing instruments of crime. After denying appellant's post-verdict motions, the trial court sentenced him to an aggregate term of imprisonment of five to ten years. Appellant did not file a

direct appeal at that time. However, he subsequently filed a petition for post-conviction relief, and he was granted leave to appeal *nunc pro tunc*. This direct *pro se* appeal was then filed.

In this appeal, appellant raises five issues: (1) whether sufficient evidence was presented to sustain his conviction for *attempted* burglary; (2) whether sufficient evidence was presented to sustain his conviction for loitering and prowling at night time; (3) whether the trial court erred in refusing to instruct the jury on "mere presence"; (4) whether the Commonwealth failed to exercise due diligence in bringing him to trial within the applicable time period set forth in Pa. R.Crim.P. 1100; and (5) whether the prosecutor committed misconduct in his closing argument. After reviewing the record and thoroughly considering the parties' arguments, we affirm the judgment of sentence.

The factual circumstances leading to appellant's arrest and conviction were set forth by the trial court as follows:

[O]n April 21, 1987, at 7:47 p.m., defendant left his home in West Reading, Pennsylvania, and drove approximately twenty miles to the Borough of Ephrata, in Lancaster County. He was followed by several unmarked police cars and was being watched from a State Police helicopter. After driving slowly down several residential streets, he parked his car at an apartment complex, turning his lights out. Helicopter surveillance ceased because it had grown too dark to continue. Mr. Melnyczenko then walked a short distance and disappeared from police view into the yards of a row of houses, reappearing some six or seven minutes later. Mr. Melnyczenko was then startled when an Ephrata Borough police car pulled out of a nearby driveway. He crossed the street, again disappeared from police view behind houses, and came out less than a minute later. Mr. Melnyczenko began running behind a group of homes. Shortly thereafter, he was arrested. He was dressed in dark clothing, and carrying a heavy gauge screwdriver, a ten-inch pry bar, two flashlights, a knit cap, and a pair of gloves. The temperature was approximately 70 degrees

Fahrenheit. No direct evidence of an attempted break-in of any of the houses was found.

Trial Court Opinion (Buckwalter, J.), 7/19/88, at 1–2.

In his first issue, appellant contends that the evidence was not sufficient to support the conviction for *attempted* burglary. He argues that his actions, namely, walking through back yards while in possession of a pry bar, a large screwdriver, two flashlights, and gloves, do not constitute a substantial step toward commission of a burglary. Appellant also emphasizes the testimony at trial which reveals that there was no indication that he attempted to break into any houses.

Under the Crimes Code, a person commits criminal attempt "when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). Compared to the prior "overt act" test, the Crimes Code definition "broadens the scope of attempt liability by concentrating on the acts the defendant has done and does not any longer focus on the acts remaining to be done before actual commission of the crime." *Commonwealth v. Gilliam*, 273 Pa.Super. 586, 589–90, 417 A.2d 1203, 1205 (1980).

Appellant has cited, and our research has disclosed, no cases which hold that reconnoitering an area while in the possession of burglary tools, such as we have in this case, is insufficient, in the absence of a physical attempt to enter, to prove a substantial step toward commission of a burglary. To the contrary, this Court in *Commonwealth v. Cannon*, 297 Pa.Super. 106, 443 A.2d 322 (1982), held that the evidence was sufficient to support the conviction of attempted burglary where, as here, there was no evidence that the defendant had tampered with a door or window of a building or occupied structure.

Cases in which the Supreme Court and this Court have held that the evidence was insufficient to prove attempted burglary, such as *Commonwealth v. Stanley*, 453 Pa. 467, 309 A.2d 408 (1973), and *Commonwealth v. McCrea*, 308 Pa.Super. 284, 454 A.2d 132 (1982), do not require a different result. In each

of those cases, the evidence disclosed physical damage to a building that suggested an attempt had been made to effect an illegal entry therein. The holdings in each of those cases was that the evidence was insufficient to connect the accused to the damage. Those cases do not hold, and we decline to do so here, that a defendant cannot be convicted of attempted burglary until he physically tampers with a building or occupied structure. In the present case, the evidence referred to by the trial court and quoted above, when taken in its entirety, warrants a conclusion that appellant was reconnoitering the area both with the intent to burglarize a residence and with sufficient means to carry out his intent. With those actions, appellant took a substantial step toward commission of the crime of burglary. Accordingly, sufficient evidence was presented to sustain the conviction for attempted burglary.

In his next issue, appellant contends that the evidence was insufficient to sustain the conviction for loitering and prowling at night time. That offense is defined as follows: "Whoever at night time maliciously loiters or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor of the third degree." 18 Pa.C.S. § 5506. Appellant argues that there is insufficient evidence to prove the elements of night time, maliciousness, and loitering or prowling. For the following reasons, we conclude that sufficient evidence was presented to sustain the conviction.

Night time is defined as the time between sunset and sunrise. 1 Pa.C.S. § 1991. Police Officer Mark Pellicciotti, who was observing appellant from a helicopter, testified that he lost visual contact of appellant because it was dark. He also testified that appellant turned his headlights off after he stopped his car. Corporal James A. Nettles, who was conducting surveillance from an unmarked van, also testified that appellant was driving with his headlights on and that it was getting dark. This was sufficient evidence from which the jury could conclude that it was night.

■ Appellant also argues that there was no evidence that he acted maliciously. As discussed above, the evidence was sufficient to prove that appellant was reconnoitering the area both with the intent and the means to burglarize a residence. This is sufficient evidence to prove that he acted maliciously.

■ Additionally, appellant contends that sufficient evidence is lacking to prove that he loitered or prowled. "To loiter is to stand around or move slowly about; to spend time idly; to saunter; to delay; to linger; to lag behind. To prowl is to rove or wander over in a stealthy manner; to pace or roam furtively." *Commonwealth v. Belz,* 295 Pa.Super. 183, 186, 441 A.2d 410, 411 (1982) (citation and internal quotation marks omitted). Trooper Nettles testified that appellant, dressed in dark clothing, walked through the back yards of four or five houses for approximately six or seven minutes. Trooper Nettles also testified that when appellant re-emerged, he was walking very cautiously. Furthermore, as discussed above, sufficient evidence was presented to support the conclusion that appellant was reconnoitering the area with the intent to commit a burglary. It is a reasonable inference that, in doing so, he was wandering through the yards in a stealthy manner. For these reasons, we conclude that sufficient evidence was presented from which the jury could find appellant guilty of loitering or prowling at night.

As for appellant's final three issues, we have thoroughly reviewed the record and considered his arguments. After doing so, we conclude that the trial court has adequately discussed and correctly decided those issues in its opinion. We therefore affirm.

Judgment of sentence affirmed.

BROSKY, J., files a concurring and dissenting opinion.

BROSKY, Judge, concurring and dissenting:

I disagree with the decision of the majority to affirm the judgment of sentence with respect to appellant's conviction for attempted burglary and loitering and prowling in the night time. My review of the record and the applicable case law

convinces me that insufficient evidence was presented at trial to sustain appellant's convictions for attempted burglary and loitering and prowling in the night time.

This appeal is taken from the judgment of sentence entered after a jury convicted appellant of attempted burglary (18 Pa.C.S.A. § 901(a)), possessing instruments of crime (18 Pa. C.S.A. § 907) and loitering and prowling in the nighttime (18 Pa.C.S.A. § 5506). Appellant was sentenced following denial of post-verdict motions to a term of incarceration of five to ten years on the charge of attempted burglary, to a concurrent term of imprisonment of two to four years on the charge of possessing instruments of crime and to a concurrent term of imprisonment of six to twelve months on the charge of loitering and prowling.

Appellant presents five issues for consideration, to-wit: (1) a challenge to the sufficiency of the evidence to sustain appellant's conviction for attempted burglary; (2) error by the trial court in failing to instruct the jury that appellant's "mere presence" was insufficient proof of guilt; (3) a claim that the Commonwealth failed to exercise due diligence in bringing appellant to trial in a timely fashion pursuant to Pa.R.Crim.P. 1100; (4) a challenge to the sufficiency of the evidence to sustain appellant's conviction for loitering and prowling; and (5) a claim of improper prosecutorial comment in closing argument.

I would be constrained to vacate the judgment of sentence entered on the charges of attempted burglary and loitering and prowling in the night and discharge appellant on those charges, only. I would vacate the judgment of sentence in its entirety and remand for resentencing on the remaining charge. (*See* note 1, *infra*).

The trial court, in its opinion written in support of its denial of appellant's post-verdict motions, has summarized the factual scenario of this case as follows:

Testimony at trial, viewed in the light most favorable to the Commonwealth, established that on April 21, 1987, at 7:47 p.m., [appellant] left his home in West Reading, Pennsylvania, and drove approximately twenty miles to the Borough

of Ephrata, in Lancaster County. He was followed by several unmarked police cars and was being watched from a State Police helicopter. After driving slowly down several residential streets, he parked his car at an apartment complex, turning his lights out. Helicopter surveillance ceased because it had grown too dark to continue. [Appellant] then walked a short distance and disappeared from police view into the yards of a row of houses, reappearing some six or seven minutes later. [Appellant] was then startled when an Ephrata Borough police car pulled out of a nearby driveway. He crossed the street, again disappeared from police view behind houses, and came out less than a minute later. [Appellant] began running behind a group of homes. Shortly thereafter, he was arrested. He was dressed in dark clothing, and carrying a heavy gauge screwdriver, a ten-inch pry bar, two flashlights, a knit cap, and a pair of gloves. The temperature was approximately 70 degrees Fahrenheit. No direct evidence of an attempted break-in of any of the houses was found.

Pp. 1–2.

As his first issue, appellant challenges the sufficiency of the evidence to sustain his conviction for attempted burglary. The offense of burglary is defined by the Crimes Code as follows:

(a) **Offense defined.**—A person is guilty of burglary if he enters a building or occupied structure, or separately secured or occupied portion thereof, with intent to commit a crime therein, unless the premises are at the time open to the public or the actor is licensed or privileged to enter.

18 Pa.C.S.A. § 3502(a). The Crimes Code defines the offense of criminal attempt as follows:

(a) **Definition of attempt.**—A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

18 Pa.C.S.A. § 901(a).

The trial court states in its Opinion and the Commonwealth argues on appeal that appellant's reconnoitering the neighbor-

hood represented a substantial step toward the commission of a burglary. The trial court opined:

> [Appellant's] presence in back yards in a residential neighborhood in the evening, coupled with his dress and the tools he was carrying, reasonably supports the conclusion that he was reconnoitering the neighborhood in search of an appropriate target for burglary. We find that the jury was justified, on the evidence presented, in concluding that this represented a substantial step toward the commission of the crime of burglary.

*Id.*

The Commonwealth makes a similar argument relying upon Section 5.01 of the Model Penal Code. Section 5.01 of the Model Penal Code represents a model penal statute for criminal attempt. The comment following Section 901 of the Crimes Code states that the latter section is derived from Section 5.01 of the Model Penal Code, which is a lengthy, detailed statute. The Commonwealth, in its Brief to this court, admits:

> Although Section 901 of the Crimes Code is, according to the Official Comment, 'derived' from Section 5.01 of the Model Penal Code, Section 9.01 [sic] incorporates only the brief 'substantial step' test of the Model Penal Code and does not incorporate specific illustrations and sub-definitions set forth at length in Model Penal Code Section 5.01. Among those are specific factors to be considered in assessing whether conduct constitutes a 'substantial step.'

At p. 8.

The Commonwealth, however, argues that since the Crimes Code definition of attempt is derived from Section 5.01 of the Model Penal Code, the language from Section 5.01 which the Legislature of this Commonwealth did not adopt as part of Section 901 of the Crimes Code should nevertheless be considered. These specific illustrations which the Legislature did not include as part of the text defining criminal attempt in Section 901 are set forth at great length in Section 5.01(2) of the Model Penal Code and include, *inter alia*, "reconnoitering

the place contemplated for the commission of the crime" Model Penal Code, § 5.01(2)(c).

The Reporter's Comment to the Model Penal Code states: "Although the phrase 'substantial step' was defined in the Model Penal Code [*see* Section 5.01(2) ], it is undefined in the Pennsylvania adoption and, therefore, will be subject to judicial interpretation." *In* S.S. Toll, *Pennsylvania Crimes Code Annotated* 222 (1974). Moreover, the Explanatory Note following Section 5.01 of the Model Penal Code states:

> **Reconnoitering.** Convictions for attempt have generally been sustained when the actor has been apprehended during or after reconnoitering the place contemplated for the commission of the crime. The crimes involved have included ... burglary. However, because other factors were present in all of these cases, such as possession of weapons or equipment, confederates or additional activities, *it is difficult to assert unqualifiedly that reconnoitering, without more, was a sufficient overt act to constitute an attempt at common law.*

At pp. 335–36. (Emphasis supplied; footnotes omitted). The Explanatory Comment to the Model Code then makes a footnote reference to *Commonwealth v. Eagan*, 190 Pa. 10, 42 A. 374 (1899), which held in *dicta* that mere arrival at a place to be burglarized does not constitute attempted burglary. Instead, the acts of attacking and beating the victim in order to prevent the victim from resisting the entry of the actors into his house to commit a burglary, our supreme court held, "had gone beyond mere intent and preparation, and had passed into acts which amounted to an attempt at some crime. The crime was for the jury to determine, and that it might be burglary, was so fair an inference...." At 23, 42 A. 374.

In sum, then, the position of the trial court and the Commonwealth is that appellant took a substantial step toward the commission of a burglary when, with no evidence of any attempted break-ins or entries, as conceded by the trial court and by the Commonwealth, appellant reconnoitered the neighborhood in question while having in his possession various tools. In effect, the trial court and the Commonwealth have

now added a new dimension to the requirement of 'substantial step' to include reconnaissance activity to support a charge of attempted burglary where the actor merely possesses tools upon his person when the Commonwealth is unable to present any direct or circumstantial evidence of any break-in or entry or attempted break-in or attempted entry with or without tools.

In order to sustain its burden of proving an attempted burglary, the Commonwealth must show, first, the intent to enter "a building or occupied structure, or separately secured or occupied portion thereof" and, secondly, an intent to commit a crime once inside. *Commonwealth v. Cannon,* 297 Pa.Super. 106, 443 A.2d 322 (1982). The intent to commit a crime is a specific one under the law of attempt in this Commonwealth. *See* 18 Pa.C.S.A. § 901(a), supra. *Commonwealth v. Von Aczel,* 295 Pa.Super. 242, 441 A.2d 750 (1981); *Commonwealth v. Turner,* 290 Pa.Super. 428, 434 A.2d 827 (1981). This specific intent to support a conviction for attempted burglary may be inferred directly from the accused's words or conduct or circumstantially. *Commonwealth v. Von Aczel, supra; Commonwealth v. Turner, supra.*

The cases in this Commonwealth which involve attempted burglary, with or without an accompanying charge of possession of instruments of crime, all require either direct or circumstantial evidence of an attempted entry and/or breaking to enter. None of these cases which follow turn upon the particular appellant's reconnaissance of a neighborhood or an area or a particular residence or business.

In *Commonwealth v. Brown,* 336 Pa.Super. 628, 486 A.2d 441 (1984), a surveillance case, police observed the appellant's co-defendant approach the front of a darkened house and knock on the door thereto for approximately five minutes. Thereafter, the co-defendant returned to the vehicle where the appellant and another co-defendant waited. The appellant then proceeded to the rear of the house. A police officer stationed at the rear of the residence observed the appellant breaking the glass of the back door and kicking and banging the door. Ten minutes later, the appellant returned to the

vehicle where his cohorts awaited him and removed a shiny object from the trunk of the car. The appellant returned to the rear of the house and then returned to the vehicle approximately ten minutes thereafter, whereupon the appellant and his cohorts left the scene. The appellant and his companions then returned to the scene within a short span of time. The appellant then returned to the rear of the house for the third time for about ten minutes and then returned to the automobile. Shortly thereafter, he was arrested. At trial, a detective who had examined the rear of the house testified that he found broken glass, a door knob and a strip of molding from a side door on the pavement. The arresting officer found a bent screwdriver and hammer in the automobile, and upon the appellant the officer found a nine-inch switchblade. This court held that the appellant's repeated trips to the rear of the darkened house, his breaking the glass and the banging and kicking of the door, his possession of a hammer and a bent screwdriver and the physical evidence of the pry marks and the doorknob on the pavement provided sufficient evidence upon which to sustain his conviction for attempted burglary.

A burglary in progress was reported in *Commonwealth v. Von Aczel, supra,* where the officer responding to the call observed the appellant hunched over the lock of a door of a pet shop prying at the lock. The officer also noticed that a plate glass window had been broken, that recent damage had been done to the window of the door and that marks were around the lock. The officer removed a screwdriver from the appellant's hand and asked the appellant what he was doing. The appellant replied that he was waiting for a bus. This court held that a report of a burglary in progress and a direct observation of appellant prying a lock with a screwdriver constituted sufficient evidence to sustain the appellant's conviction for attempted burglary.

The same result ensued in an attempted residential burglary in *Commonwealth v. Turner, supra,* where the appellant was observed by a police officer stopping at a residence, stepping onto the porch, ringing the doorbell and knocking on the door, looking under the curtains of the front door window,

returning to the street and then to the house again and then beginning to pry the door with a screwdriver and then butting it with his shoulder. The appellant went to the street a second time and then resumed the above activities. The appellant fled into an alley when he heard police sirens. The police who followed the appellant into the alley heard metal objects dropping. The police officer who initially observed the appellant retrieved two screwdrivers and a hammer in the alley. Fresh pry marks were found in the area of the door lock. This court held that the above activities provided the specific intent necessary to effect an unauthorized entry into the residence.

In *Commonwealth v. Morgan*, 265 Pa.Super. 225, 401 A.2d 1182 (1979), this court held that the appellant's acts of ringing the front doorbell of a residence and then proceeding to the rear door where the owner of the residence heard rattling and grinding and where a police officer who was summoned found the appellant with a pair of wire cutters in his hand standing before a screen door through which was cut a hole large enough to push a hand through near the lock thereof was sufficient to prove that the appellant's objective was to open the screen door, not simply to maliciously destroy the screen.

In *Commonwealth v. Kale*, 331 Pa.Super. 155, 480 A.2d 291 (1984), a tenant of an apartment located above a jewelry store heard glass breaking. When the police were summoned, the tenant noticed a broken window at the rear of the jewelry store. The police found footprints in the snow in the backyard of the jewelry store premises. When they followed the footprints, the police found the appellant lying among the shrubs near a garage. Glass fragments and wood splinters were found in a pair of leather gloves and in a pair of sneakers found near the appellant. The glass and wood pieces found in the sneakers and the gloves matched the materials of the glass and wood found at the scene of the attempted burglary. Despite the absence of pry marks and burglary tools, the circumstances of the footprints leading to appellant and the presence of glass and wood fragments in appellant's gloves and sneakers which matched the fragments found at the scene

of the crime supported the appellant's conviction for attempted burglary.

In response to a burglary in progress, a police officer observed the appellant near a toy store carrying an object in his hands. When the appellant saw the police officers, he placed the object on a ledge near a public telephone. When the police officer investigated, he found a claw hammer and a screwdriver altered to resemble a chisel. He also found about fifteen feet from where he had observed the appellant a cardboard partially covering a hole in the wall of the toy store. The officer followed the appellant and observed that he was wearing heavy work gloves, despite the mild temperature. The officer also observed that the appellant's clothes and gloves were covered with dust resembling a pile of dust near the hole in the wall of the toy store. This court in *Commonwealth v. Hankins*, 314 Pa.Super. 7, 460 A.2d 346 (1983), held that the above circumstances were sufficient to allow an inference of guilt of attempted burglary.

In *Commonwealth v. Jones*, 298 Pa.Super. 199, 444 A.2d 729 (1982), a police officer responding to a report of a burglary in progress arrived at an address where he observed figures on the roofs of the addresses in question. The officer proceeded to an alley at the rear of the buildings in question and climbed to a rooftop of a house north of the reported burglary. There, he observed several figures on the rooftop of the building of the reported burglary. He ordered one of the figures to stop, lost sight of that person and then located him in an alley hiding in a doorway. The appellant, the figure hiding in the doorway, was arrested and searched. The search produced no incriminating evidence. However, an examination of the building where the burglary had been reported revealed two chisels, a hammer and a torch lying on the floor of the laundromat in that building. A hole had been cut in the roof from which a rope hung. Approximately five hundred dollars in coins had been forcibly removed from the laundromat machine money boxes. This court held that the circumstantial evidence of the appellant's running on the rooftop of the building adjacent to the laundromat which he accessed

through the hole in the roof, his attempt to conceal himself in the alley and the attempted theft of the coins from the laundromat money machines was sufficient to convict him of attempted burglary.

In *Commonwealth v. Cannon, supra,* a case where the appellant was observed coming from a rear yard door after the owner of the premises heard the rattling of a trash can and saw that the door of the fence had been broken open, other evidence of the appellant's attempted burglary also existed. The officer responding to the call of the owner of the premises observed that the lock of the fence door was knocked off the hinges and that wood splinters were lying around. This court rejected the appellant's argument that the intent to commit a burglary was negated by the fact that he left the yard without any attempt to enter the residence. The court stated that the appellant had forcibly entered the rear yard by breaking the lock on the door of the fence, thus giving rise to an inference that he had entered the yard to approach the residence and enter it to commit a theft, despite the fact that no evidence existed of tampering with the door of the residence and no burglary tools were found. This court also found persuasive to appellant's guilt that he had denied being in the rear yard at all. The court reasoned that the appellant may have believed the residence to be unoccupied when he broke the fence door lock and splintered the wood without any response from the residents of the house. When the resident turned on the light, the appellant realized that the residence was not unoccupied and fled, whereupon he encountered the police.

Nor do I believe that appellant's conduct here rises to the level of the requisite substantial step to commit the crime of attempted burglary. For example, and by contrast, striking a garage door padlock with a rock constituted a substantial step to commit burglary in *Commonwealth v. Willetts,* 277 Pa.Super. 538, 419 A.2d 1280 (1980), where the victim was awakened by the appellant who was kicking a yellow van which he had stolen and where the victim observed the appellant approach a garage near her home. Although the appellant was arrested

inside the van away from the scene of the attempted burglary, fresh snow tracks leading from the van to the garage and to a broken window pane in the garage plus the presence of a large rock near the garage door supplied enough indicia of evidence to connect the appellant to the crime. This court held that the striking of the garage door with the rock provided the requisite intent to gain entrance thereto.

The tripping of a burglar alarm in a pharmacy immediately prior to the spotting of the appellant and his companions on the stairs leading to the service entry of the stores at a shopping center where the pharmacy was located was held to have constituted a substantial step toward the commission of a burglary at the pharmacy in *Commonwealth v. Pertschi*, 273 Pa.Super. 412, 417 A.2d 715 (1980). The appellant and his companions were found hiding lying down on the stairway near to which officers found a hammer and a folded paper bag which were dry despite an earlier rain. A subsequent search uncovered a glove, a sock and a pair of surgical gloves, all dry, near the hiding place. This court held that circumstantial evidence, viz: the time of the night, the proximity of the hammer, folded bag and glove, the use of the service entrance stairs to gain access to the pharmacy, hiding to avoid detection, and the tripping of the alarm just before being observed constituted sufficient evidence of attempted burglary.

In *Commonwealth v. Dalahan*, 262 Pa.Super. 615, 396 A.2d 1340 (1979), the appellant was observed crouching in an alley where, immediately adjacent to him, was a tire iron. In the alley, the patrol officer who observed appellant crouched there observed a partially opened window of a luncheonette. The window of the luncheonette had been pried opened because the officer observed fresh marks made by a "jimmy" and slivers of wood on the window sill. Moreover, the appellant was unable to explain his crouched presence, except that he had been walking home from a party. This court found the explanation inconsistent with the fact that appellant's father's automobile, for which he had a registration certificate, was parked nearby. This court further found that the appellant's activities, coupled with the presence of the tire iron near him

and the fresh "jimmy" marks, constituted a substantial step toward entry into the luncheonette with the intent to commit a crime. We also found that the appellant manifested control of the tire iron under circumstances which indicated that its use was not lawful.

This court held in *Commonwealth v. Corbin,* 251 Pa.Super. 512, 380 A.2d 897 (1977), that the appellant's entry into an enclosed yard behind a pharmacy and his tampering with the door leading to the interior of the building constituted a substantial step toward the commission of a burglary of the pharmacy. The appellant was observed in the backyard by the owner of the pharmacy who lived on the second floor thereof. The owner of the pharmacy was awakened by a noise and heard a scraping sound coming from the other side of the back door. At trial, the owner identified the appellant as the person who had been tampering with the rear door of the pharmacy.

By contrast, in *Commonwealth v. Stanley,* 453 Pa. 467, 309 A.2d 408 (1973), our supreme court vacated the judgment of sentence on the charge of attempted burglary and discharged the appellant. A patrol officer observed a bent window screen which had been pried away from the window. The window, which had been boarded, showed no evidence of any tampering. The officer observed the appellant walk out of a doorway near the bent screen and proceed towards a sand pile where he bent over to place an object. The supreme court noted, first, that the appellant's mere presence where the screen had been bent was insufficient to convict him of attempted burglary. Secondly, even if the Commonwealth could have shown that the appellant possessed the screwdriver, which had been found in the sand pile, no evidence was presented that the appellant used it to bend the screen. Moreover, no evidence existed that the screwdriver which was found in the sandpile was the instrument used to pry the screen from the window. No other indicia of evidence existed to link appellant to an attempted burglary, viz: no report was made of a burglary in progress, no noises were heard by the officer coming from the

place of the alleged attempt, and appellant did not flee from the scene.

More to the point, in *Commonwealth v. McCrea*, 308 Pa.Super. 284, 454 A.2d 132 (1982), this court vacated the judgment of sentence on the charges of attempted burglary and possession of an instrument of crime and discharged the appellant. In *McCrea*, a patrol officer observed the appellant in an "L" shaped alley and ordered him to place his hands against the wall. The officer seized a pair of pliers from inside the appellant's belt. The officer also found a pocket knife in the appellant's pocket. When other officers had arrived in the alley, a jackbase with a smudge of aqua paint was located approximately four feet from where the appellant was standing. Approximately ten to twelve feet from where the officer initially observed the appellant a hole was discovered in the cinderblock wall of a market which was painted aqua. The hold did not penetrate the wall. This court first noted that although circumstantial evidence, alone, may be sufficient to convict, nevertheless, the evidence adduced only showed that the appellant had been urinating in an alley approximately ten to twelve feet from a hole in the wall of a market and that mere presence was insufficient to convict. As to the appellant's possession of a pair of pliers and a knife, this court wrote:

> There was no evidence that they had any relationship to the attempted crime or that appellant intended to use them for any criminal purpose. Although a jackbase was found four feet from where appellant was standing, the trial court concedes in its opinion that there was reasonable doubt that the jackbase was ever in appellant's possession.

At 290, 454 A.2d at 134. Lastly, this court observed that the attempted flight of the appellant was as consistent with guilt as it was with innocence and did not convert the appellant's presence at the scene into proof of guilt.

I have reviewed the trial transcript of the case at bar. The evidence adduced showed that appellant was seen emerging from the rear of residences by a surveillance team of officers from various local police departments and from the Pennsylva-

nia State Police.  None of the witnesses testified to any break-in, entry or any attempt thereto.  No physical or other evidence, circumstantial or direct, was presented of any attempted entry or break-in.  No one observed appellant breaking in or entering or attempting to do so.  No report of a burglary in progress was made during this time.  Appellant was not observed near any location where evidence would demonstrate that a break-in or an attempt to do so had been made.  Appellant was not seen attempting to pry open any door, window or any other mode of access of a structure.  He was not observed peering in windows or ringing doorbells.  In short, I would find that appellant's actions did not rise to the level of the substantial step necessary to attempt the crime of burglary.  Therefore, I would be constrained to vacate the judgment of sentence entered on the attempted burglary conviction and to discharge appellant on that charge.[1]

Since I would discharge appellant on the charge of attempted burglary, I would not address appellant's second issue in which he challenges the court's refusal to read his proposed point for charge on mere presence at the scene of the attempted burglary.

Appellant also challenges the sufficiency of the evidence to sustain his conviction for loitering and prowling in the night time.  The statute proscribing loitering and prowling reads:

> Whoever at night time maliciously loiters or maliciously prowls around a dwelling house or any other place used wholly or in part for living or dwelling purposes, belonging to or occupied by another, is guilty of a misdemeanor of the third degree.

18 Pa.C.S.A. § 5506.  Our supreme court has stated that in order to sustain its burden, the Commonwealth must prove beyond a reasonable doubt (1) a loitering or prowling, (2) at night, (3) around a dwelling.  *Commonwealth v. Clinton*, 391

---

1. Appellant does not challenge his conviction for possession of instruments of crime on appeal.  Therefore, I express no opinion with respect to that charge.

Pa. 212, 137 A.2d 463 (1958).[2] Our supreme court has also stated that the purpose of the loitering and prowling statute is "to alleviate the danger to human life and quiet enjoyment of one's dwelling which is presented by the nighttime loitering or prowling of malicious-minded individuals." *Commonwealth v. Duncan,* 456 Pa. 495, 501, 321 A.2d 917, 919 (1974); *see also Commonwealth v. Williams,* 394 Pa.Super. 90, 574 A.2d 1161 (1990) (same). This court explained the purpose of the prior law as follows:

This Act was obviously intended to punish not only those persons who at night are bent on peeping into the private affairs of citizens in their dwellings, but also those individuals who are found at or near dwellings without lawful purpose or reason and *whose presence can only be explained in some* preparation for or *attempt at illegality or crime.* The mischief prohibited is that intentional act, without legal justification or excuse, which has as its purpose injury to the privacy, person or property of another. It is that act which has for its purpose improper motive, evil design, depravity or perversion that is prohibited. Of necessity, therefore, each act must be considered under the peculiar facts and circumstances which give rise to the accusation.

*Commonwealth v. De Wan,* 181 Pa.Super. 203, 209, 124 A.2d 139, 141 (1956); *see also Commonwealth v. Nicholls,* 207 Pa.Super. 410, 217 A.2d 768 (1966) (same).[3] (Emphasis supplied).

This court in *Commonwealth v. Belz,* 295 Pa.Super. 183, 441 A.2d 410 (1982), defined the term "malicious", which is used in the statute here in question, as "an intent to do a wrongful act

**2.** The appellant in *Clinton* was convicted of loitering and prowling under the Penal Code of 1939 (18 P.S. § 4418), now repealed and replaced by Section 5506 of the the Crimes Code of 1973 (18 Pa.C.S.A. § 5506). However, the language of the statute under both Codes is identical, except that the present loitering and prowling statute has graded the misdemeanor offense to be one of the third degree.

**3.** *De Wan* and *Nicholls* were also decided under the Penal Code of 1939. *See* note 2, *supra.* This court adopted the purpose language of *De Wan* in *Commonwealth v. Belz,* 295 Pa.Super. 183, 441 A.2d 410 (1982), a case arising under the current statute.

or having as its purpose injury to the privacy, person, or property of another." At 186, 441 A.2d at 411. The *Belz* court also defined the word "loiter" as "stand[ing] around or mov[ing] slowly about; to spend time idly; to saunter; to delay; to linger; to lag behind." The term "prowl" was defined by *Belz* to mean "to rove or wander over in a stealthy manner; to pace or roam furtively." *Id.*, *citing Commonwealth v. De Wan, supra.*

In the cases I have examined where an accused was convicted of loitering or prowling, we have noted the existence of an intent to commit a wrongful act to the person, property or privacy of an individual by the accused whose presence was for no other purpose but to attempt a crime or some other illegality. For example, in *Commonwealth v. Williams, supra,* the appellant, after midnight, drove into a parking lot of an apartment complex designed for use of tenants and guests. He removed his trousers and began to pace through the lot. The appellant, clothed only in underwear and a T-shirt, was observed by a resident of the complex entering an automobile which was owned by the resident's neighbor. Subsequently, the police found the appellant crouched on the passenger side of the vehicle. The owner of the vehicle stated that the automobile had been locked. However, upon examination, she discovered that the molding had been bent and that the windows could not be closed. This court held that the appellant's act of entering and lurking inside the car of the resident's neighbor in a lot designed for the use of the tenants and guests violated the purpose of the statute.

In *Commonwealth v. Bulicki,* 359 Pa.Super. 83, 518 A.2d 577 (1986), shortly before sunrise, a householder, who had been sleeping, noticed the appellant's van parked outside her home. Her husband, upon arising, noticed an odor of cigarettes emanating from an open window. The householders were non-smokers. Subsequently, the wife pulled aside the window shades only to observe the appellant staring into the bedroom where she and her husband had been sleeping. This

act was deemed to be sufficient to convict the appellant of loitering and prowling at night.[4]

In *Commonwealth v. Belz, supra,* the appellant was observed at two a.m. in a private passageway next to a house by the occupant of the house. Using a flashlight, the appellant went through the passageway via unlocking a metal gate to a neighbor's rear yard and approached a shed in the yard. When the police arrived, the appellant attempted to place the flashlight in a mail box. The appellant was apprehended with a knife in his possession. This court found that the above actions had the purpose of invading the private property of another. This court also held that the appellant's acts of remaining in the private passageway and then entering the neighbor's yard after unlocking a gate constituted loitering in the area. His acts of attempting to conceal the flashlight was furtive, and his roaming through the private passageway and in the neighbor's yard constituted prowling.

In *Commonwealth v. Nash,* 292 Pa.Super. 79, 436 A.2d 1014 (1981), the appellant was convicted for loitering and prowling when he admitted peering into apartment windows on the night of his arrest.

The appellant and a companion were observed by a police officer at the front door of a residence ringing the doorbell, trying the front door and peering in a window beside the front door in *Commonwealth v. Nicholls, supra.* Since the appellant's response as to why he was present did not satisfy the police officer, appellant was arrested for loitering and prowling (and subsequently for burglary when the contents of an automobile which he had rented revealed fruits of a yet-not-reported burglary). This court stated that the appellant's acts of trying the front door and peering into the window of the

4. The appellant in *Bulicki* challenged whether his conduct occurred at night, and the case turned upon whether the trial court had properly instructed the jury on the definition of the word "nighttime". The *Bulicki* court stated that no statutory definition of "nighttime" existed and therefore resorted to the dictionary definition. In fact, the term "nighttime" is statutorily defined. *See* Section 1991 of the Statutory Construction Act, 1 Pa.C.S.A. § 1991.

residence without a lawful purpose supported his conviction for loitering and prowling.

In *Commonwealth v. De Wan, supra,* occupants of a nurses' residence were disturbed by noises of cracking twigs which they heard in a private passageway between their residence and a fence line adjoining their residence. One nurse observed a figure from a second floor window standing in front of the laboratory door. This figure then darted around the building. A dietician who also resided in the building heard a thud. The police were summoned and, upon their arrival, the officer standing near the tree near the nurses' residence heard a thud and saw a figure at the base of the tree. This figure was the appellant, who fled into the arms of another police officer. The subject tree was opposite the window of the room occupied by a nurse who initially heard the noise. The police officer testified that the thud which he heard was apparently caused by jumping from the tree. This court held that these acts were sufficient to sustain the appellant's conviction for loitering and prowling.

By contrast, in *Commonwealth v. Clinton, supra,* our supreme court held that the evidence was insufficient to sustain the conviction of an accused who was observed at night entering his own automobile after he and a friend had repaired it. Inside the car were found several tools which belong to the appellant's brother and which both the appellant and his brother used in their work of installing television sets and high powered aerials. When the appellant was observed entering his automobile, he was doing so for the purpose of testing the repairs that he and his friend had done on it that night. The supreme court rejected the rationale of the trial court that the appellant had not satisfactorily explained why he would have been testing the repairs of a car near midnight at a distance of fifty or sixty blocks from where he resided. The supreme court concluded that the appellant's acts constituted neither loitering nor prowling.

Here, appellant was only observed by a surveillance team appearing and then disappearing from view. No resident of the neighborhood involved testified to observing appellant

loitering or prowling about his or her residence. Appellant was not seen peering in windows, or hiding, crouching or lurking in or near any resident's property. The record adduced at trial does not support the requirement that appellant's presence in the neighborhood was to attempt some crime. Whatever appellant's purpose was in the neighborhood, the evidence does not support a finding that it was malicious, i.e., for the purpose of injuring the privacy, person or property of another. *Commonwealth v. Belz, supra.* Appellant's act of appearing and disappearing from surveillance did not have as its purpose an improper motive or an evil design which could be characterized as depraved or perverted. *Commonwealth v. De Wan, supra.* On this basis, therefore, I would be constrained to vacate the judgment of sentence entered upon appellant's conviction for loitering and prowling and discharge appellant on that charge.

Because I would vacate appellant's judgment of sentence on the charge of loitering and prowling, I would not address appellant's claim of improper prosecutorial comment made during closing with respect to this charge.

Lastly, appellant maintains that the Commonwealth's failure to bring him to trial within the prescribed time evidenced a lack of due diligence. The majority relies upon the Opinion of the trial court for its disposition of this claim. I will expand upon the discussion contained in the Opinion of the trial court on this issue.

A criminal complaint charging appellant with the subject offenses was filed on April 21, 1987, thus making the original run date October 19, 1987. *See* Pa.R.Crim.P. 1100(a)(2).[5] A preliminary hearing was scheduled for May 1, 1987, and, at the request of appellant's counsel, the hearing was rescheduled twice, once for June 4, 1987, and then for June 29, 1987. This resulted in a fifty-nine day exclusion of time, thus making appellant's new run date December 16, 1987. It is well established that a defense request for a continuance of a

5. All relevant proceedings had transpired before Pa.R.Crim.P. 1100 was amended on October 31, 1987. Therefore, all references in the text will be to the prior Rule.

preliminary hearing forms the basis for an automatic exclusion of time for the purpose of Rule 1100. *Commonwealth v. Neal,* 387 Pa.Super. 165, 563 A.2d 1236, *appeal denied,* 525 Pa. 597, 575 A.2d 564 (1989); Pa.R.Crim.P. 1100(d)(2)(ii).

The case was originally listed for the September 1987 trial term but was not reached. It was then reset for the November 1987 trial term. On October 7, 1987, the Commonwealth filed its Petition to extend the time within which to commence trial on the basis that the prosecutor was unavailable to try the case because he was engaged in the trial of drug cases which had overlapping witnesses and earlier run dates than that of appellant's case. On November 23, 1987, the court held a hearing on the Commonwealth's Petition to extend and allowed the Commonwealth to amend the Petition on the basis that the Commonwealth could not proceed on November 23, 1987, the last date of the November trial term, because of the unavailability of three prosecution witnesses. Since the Lancaster county court of common pleas had no term of court in December 1987, it was necessary to reschedule appellant's trial beyond the new run date of December 16, 1987, to the January 1988 term of court. Appellant's trial actually commenced on January 6, 1988.

Appellant now complains that the trial court erred in granting the Commonwealth's Petition to extend because the Commonwealth did not demonstrate due diligence. I disagree.

First, I note that the test of due diligence is one of reasonableness under the circumstances. *Commonwealth v. Mayo,* 344 Pa.Super. 336, 496 A.2d 824 (1985). Secondly, I observe that the trial court relisted appellant's case for trial to the January 1988 term of court, appellant's trial actually commencing on January 6, 1988. I find that this date was the earliest possible one consistent with the business of the court, i.e., that no December 1987 trial term existed in the Lancaster county court of common pleas. *See Commonwealth v. Nellom,* 388 Pa.Super. 314, 565 A.2d 770 (1989). Moreover, our supreme court in *Commonwealth v. Crowley,* 502 Pa. 393, 466 A.2d 1009 (1983), stated that courts are not required to continually rearrange their dockets to ensure that all defen-

dants are tried within one-hundred eighty days. In this case, the trial court listed appellant's trial for the next trial term in January 1988, and, in fact, appellant's trial began on January 6, 1988, which is less than thirty days from the new run date of December 16, 1987. *See Commonwealth v. Crowley, supra.*

The court administrator of the criminal division of the Lancaster county common pleas court testified at the Rule 1100 hearing that each of the drug cases which the district attorney had been trying during the September and November 1987 term of court had earlier run dates than had appellant's case. The system used by a court of common pleas to schedule criminal cases wherein cases with earlier run dates would be tried prior to cases with later run dates is a decisive factor in a court's conclusion that the Commonwealth had exercised due diligence. *Commonwealth v. Mayo, supra.* Lastly, I note that the unavailability of prosecution witnesses does not give rise to a finding of lack of due diligence by the Commonwealth. *Commonwealth v. Figueroa,* 331 Pa.Super. 236, 480 A.2d 332 (1984). The three witnesses, two police officers and a private person, had been subpoenaed for the September 1987 term of court. Appellant's counsel, himself, conceded to this and acknowledged that the subpoenaes were still in force. Counsel stated: "There were no new subpoenas, [sic] because subpoenas stay in effect until the case is terminated...." N.T., 11/23/87, 26. Before the original run date of October 19, 1987, and on October 7, 1987, the Commonwealth filed its Petition to extend because it had anticipated a problem with the prosecutor's unavailability due to the trial of other, earlier run date cases. The Commonwealth requested the trial court to reschedule appellant's case for the earliest possible time consistent with the court's business. Since, as I have already stated, no trial term was scheduled for December 1987, the court rescheduled appellant's trial for the next trial term, January 1988, and appellant's trial actually commenced, for the purpose of Rule 1100, on January 6, 1988. This record fails to show that the Commonwealth neglected to exercise due diligence in the commencement of appellant's trial in any respect.

In sum, I would vacate the judgment of sentence and discharge appellant as to the charges of attempted burglary and loitering and prowling in the night, only. I would also remand for resentencing on the remaining charge. *See* note 1, *supra.*